Jacob NITZ and Glenn R. Graham,
Appellants,

v.

Leo C. EHRENREICH, Appellee.

Patent Appeal No. 76–506.

United States Court of Customs
and Patent Appeals.

July 15, 1976.

David A. Greenlee, Thomas S. Baker, Jr., Columbus, Ohio, attorneys of record, for appellants.

William H. Webb, Webb, Burden, Robinson & Webb, Pittsburgh, Pa., Raymond W. Green, David E. Dougherty, Niagara Falls, N. Y., attorneys of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Associate Judges.

MARKEY, Chief Judge.

This appeal is by Nitz and Graham (Nitz) from the decision of the Board of Patent Interferences awarding priority of invention to Ehrenreich. The interference was provoked when senior party Ehrenreich copied, in modified form,[1] claims 3 and 13 of Nitz's Patent No. 3,552,533.[2] The Commissioner disapproved a board recommendation of no interference in fact on count 1, after which the board awarded priority of invention of counts 1 and 2 to Ehrenreich on the basis of his earlier filing date. We vacate on count 1 and affirm on count 2.

### The Subject Matter

The invention relates to carbonized articles useful in aircraft braking systems. An improvement over conventional carbonized articles is achieved by the addition of an agent which increases the coefficient of friction of carbon. Counts 1 and 2, including modifications of the patent claims from which they were copied (deletions bracketed, additions underscored), describe the subject matter as follows:

Count 1: A high energy absorbing friction article which is a unified structural member for running in air and which is characterized by light weight and superior heat resistance even at operating temperature as great as 3000°F, the combination of a carbonized filamentary material and a carbonized in situ resin binder material associated with said carbonized filamentary material [and providing carbon to carbon bonds therewith], said carbonized binder binding said filamentary material into an integral body, whereby to provide superior strength in the substantially all carbon friction article, further characterized by up to about [12] 48 percent by weight friction modifier.

Count 2: A friction article comprising carbonized [woundup] layers of filamentary material and a carbonized in situ resin binder material associated with said carbonized filamentary material [and providing carbon-to-carbon bonds therewith] said carbonized binder binding said filamentary material into an integral body, said article having an inner periphery and an outer periphery, and having a differential composition such that material of the article adjacent one of said peripheries has different strength and friction properties than the strength and friction properties of material of the article adjacent the other of its peripheries, whereby to provide maximal article mechanical driving strength properties adjacent one periphery and maximal friction material properties adjacent the other.

The friction modifying agents disclosed by Nitz are "silicon carbide, or alumina, or cast iron grit, etc."

Ehrenreich's disclosure concerns the improvement of carbon's physical and chemical properties by addition of boron-containing compounds. All of Ehrenreich's boron-containing compounds reinforce carbon articles. All reduce the coefficient of friction, except ditungsten boride, which is taught to be effective in increasing the coefficient of friction. A disclosed example of the utility

---

1. Rule 205(a), 37 CFR 1.205(a), provides in pertinent part:

   [A]n interference may be declared after copying the claims excluding an immaterial limitation or variation if such immaterial limitation or variation is not clearly supported in the application or if the applicant otherwise makes a satisfactory showing in justification thereof.

2. Ehrenreich's application serial No. 215,161, filed January 3, 1972, was accorded the benefit of the filing date of parent application serial No. 722,158, filed April 18, 1968, now U.S. Patent No. 3,672,936 entitled "Reinforced Carbon and Graphite Articles." Nitz's patent entitled "Carbonized Friction Article" issued January 5, 1971, on an application filed October 1, 1968.

of ditungsten boride is its use as a friction modifier in aircraft brake system parts.

## Proceedings Below

From the beginning, Nitz has insisted that the counts do not define common subject matter claimed by both parties. After declaration of the interference, Nitz filed no Preliminary Statement, but did file a Motion to Dissolve, under Rule 231(a)(1) (37 CFR 1.231(a)(1)), alleging (1) Ehrenreich's inability to make count 1 in view of 35 U.S.C. § 112, (2) absence of interference in fact on count 1 because that count is an improper modification of his claim 3 in that the "12 percent by weight friction modifier" limitation is material as shown by Nitz' patent specification, and (3) no interference in fact on count 2 because its modification deleted a material limitation. The motion was denied by the Primary Examiner.

The board took jurisdiction and recommended to the Commissioner under Rule 259, 37 CFR 1.259, that the interference be dissolved with respect to count 1. The board's view was that because the patent claim limitation of "up to 12 percent by weight friction modifier" was replaced with "up to about 48 percent by weight friction modifier" in the count, patentably distinct inventions were involved and no interference in fact existed. The Commissioner disapproved the recommendation, noting that both discoveries are directed to energy absorbing articles improved by addition of a friction modifier. In the Commissioner's opinion, the amount of modifier added was not critical and no basis therefore existed for allowing claims in separate patents.

With the case in that posture, the board concluded that "Ehrenreich's right to make is the only remaining issue as to Count 1, while the issue of interference in fact remains as to Count 2." On the right to make count 1, the board found that though Ehrenreich's disclosure does not expressly disclose an operating temperature of 3000°F, an article capable of performing satisfactorily at that temperature is disclosed. That conclusion was based on prior art indications of the functioning of conventional carbon articles at 6000°F and Ehrenreich's disclosure that his invention results in "improved physical properties and increased oxidation resistance at high temperatures as compared to conventional reinforced carbon and graphite articles."

Additionally, the board held Ehrenreich's disclosure sufficient to support the count limitation of "up to about 48 percent" modifier because it would "be perfectly obvious to one of ordinary skill in the art to arrive at a quantity of about 48 percent by weight friction modifier * * * merely by conducting simple experiments," in view of Ehrenreich's equivalent disclosure of "7%" by volume of friction modifier.

The board viewed the deletion of the "woundup" limitation (the sole issue on count 2) as an immaterial modification of claim 13 of Nitz's patent. Citing *Brailsford v. Lavet*, 318 F.2d 942, 50 CCPA 1367, 138 USPQ 28 (1963) and *McCabe v. Cramblet*, 65 F.2d 459, 20 CCPA 1220, 18 USPQ 71 (1933), the board held that an interference in fact exists because the "woundup" distinction between the patent claim and the count was shown to be old by prior art and, hence, not a patentable distinction.

With the issues of interference in fact and right to make the counts decided, the board awarded priority, on the basis of filing dates, to senior party Ehrenreich.

## Issues

The issues are (1) the jurisdiction of this court to decide the interference in fact question and (2) the existence of interference in fact with respect to counts 1 and 2.

Because we hold that no interference in fact exists with respect to count 1, we do not reach the issue of Ehrenreich's right to make that count.

## OPINION

### (1) Jurisdiction

■ Ehrenreich questions our jurisdiction to decide the interference in fact question on the ground that a decision thereon requires determination of patentability is-

sues. We do not agree. Ehrenreich contends that Nitz's presentation of the interference in fact issue, i. e., Nitz's reliance on 35 U.S.C. § 112 and Nitz's "admission" that the counts do not define his invention, raises patentability questions. Our jurisdiction, however, does not rest on the manner in which an issue is presented. It entails review of decisions of the Board of Interferences on the issue of priority and questions ancillary thereto. The existence of common subject matter defined by the interference count is a prerequisite for an award of priority, i. e., the existence or nonexistence of interfering subject matter goes to the very foundation on which an interference rests. Determination of the presence or absence of interfering subject matter is "logically related" to the jurisdiction-conferring issue of priority because that determination necessarily precedes a priority award. *Myers v. Feigelman,* 455 F.2d 596, 59 CCPA 834, 172 USPQ 580 (1972); *Palisades Pageants, Inc. v. Miss America Pageant,* 442 F.2d 1385, 58 CCPA 1225, 169 USPQ 790, *cert. denied,* 404 U.S. 938, 92 S.Ct. 269, 30 L.Ed.2d 251, 171 USPQ 641 (1971). Accordingly, we conclude that the question of interference in fact presented in this case is one ancillary to priority and may be properly considered by this court.[3]

■ Though neither argued nor discussed by the parties, we note an element of first impression in the facts of this case. The Commissioner disapproved herein the board's recommendation that the interference be dissolved and decided that an interference in fact existed with respect to count 1. The Commissioner's decisions are not *per se* appealable. We find, however, that the interposition of the Commissioner does not affect our jurisdiction under the circumstances of this case.

**3.** See also *Brailsford v. Lavet,* supra, where our jurisdiction to decide an interference in fact issue was presumed.

**4.** 35 U.S.C. § 135. Interferences.
(a) Whenever an application is made for a patent which, *in the opinion of the Commissioner,* would interfere with any pending application, or with any unexpired patent, he shall give notice thereof to the applicants, or appli-

■ In the declaration of all interferences, the Commissioner (or his examiner-delegate) makes an initial determination that two or more parties are claiming the same or substantially the same subject matter.[4] An interference in fact issue raised in an interference would thus be and has without question been traditionally preserved for appeal to this court. . That the Commissioner made the same decision a second time in the present interference does not operate to defeat the jurisdiction of this court to decide the issue on its merits.

■ Moreover, as above indicated, a decision that an interference in fact exists, by whomever made, is a decision ancillary to priority. When such decision is made by the Commissioner, neither its ancillary to priority nature nor the jurisdiction of this court is destroyed. See *Vandenburg v. Reynolds,* 242 F.2d 761, 44 CCPA 873, 113 USPQ 275 (1957); *Vandenburg v. Reynolds,* 268 F.2d 744, 46 CCPA 938, 122 USPQ 381 (1959).

■ It would be an anomaly to permit the board to consider the question of interference in fact when inferentially determined by the Commissioner, as in count 2, and to deny that the board decided the same issue on count 1, merely because of the Commissioner's refusal to dissolve the interference. The board accepted and acquiesced in the Commissioner's conclusion concerning interference in fact on count 1. Thus the Commissioner's decision was merged with and became a part of the board's decision.

■ The board has no authority to dissolve an interference; but interference in fact is an issue ancillary to priority which the board may decide at final hearing and this court may determine on appeal.

cant and patentee, as the case may be. The question of priority of invention shall be determined by a board of patent interferences (consisting of three examiners of interferences) whose decision, if adverse to the claim of an applicant, shall constitute the final refusal by the Patent and Trademark Office of the claims involved * * *. [Emphasis added.]

**544**

## (2) *Interference in Fact on Count 1*

■ The materiality of a limitation is directly related to its significance within the invention as a whole. Cf. *In re Frilette,* 436 F.2d 496, 58 CCPA 799, 168 USPQ 368 (1971). In *McCabe v. Cramblet,* supra, which we quoted with favor in *Brailsford v. Lavet,* supra, this court stated:

The first question for consideration is whether there is any patentable distinction between the counts here involved and said claims 1 to 5 of appellant's patent; or, in other words, do the claims of said patent and the counts of the interference call for the same invention? If they do, it is well established that limitations in the claims of appellant's patent having no patentable significance may under certain circumstances, be ignored, and an interference based upon claims of appellant's patent is proper with such immaterial limitations omitted. Neither is it necessary that the exact wording of the patentable elements of the claims of appellant's patent be copied; the test is whether the counts of the interference and the claims of the patent call for the same invention. If they do, an interference between them is proper. *In re Ellis & Holden,* 47 F.2d 963, 18 C.C.P.A. (Patents) 1060, and cases cited. [65 F.2d at 461, 20 CCPA at 1223, 18 USPQ at 72–73.]

■ We do not consider the question of patentability per se when we pass on the materiality of a patent claim limitation omitted from an interference count. *Brailsford v. Lovet,* supra. In the case before us the materiality of the questioned limitation and its variation must be determined in a two-step process wherein the first inquiry is whether the variation changes a material aspect of the patentee's invention (here, whether the maximum amount of friction modifier of "up to 12 percent by weight" is a material limitation) and, if that inquiry be decided in the affirmative, the second inquiry is whether the variation is itself a material variation (here, whether "up to 48% by weight" results in the counts being drawn to a different invention).

Describing the composition of the claimed article, Nitz discloses:

As the terms "substantially carbon" and "consisting essentially of" are used in the specification and the claims we mean that the filler is substantially carbon and the binder is substantially carbon even though there may be some (not more than 8 or 10 percent) molecules containing hydrogen and oxygen economically difficult to drive out, and even though there may have been a purposeful addition (not more than a total 10 or 12 percent) of one or more friction tailoring or strengthening agents (e. g., silicon carbide, or alumina, or cast iron grit, etc.), thus "substantially carbon" or "consisting essentially of carbon" can be taken to mean "at least 80 percent carbon by weight." * * * [C]onsidering the structural article as a whole its strength and lightness and heat resistance will be due to the fact that it is at least 80 percent carbon overall, and such an article is intended to be covered by any claims * * *.

■ Though Nitz is not precise on the critical upper limit of friction modifier that could be effectively used, it is abundantly clear that at least eighty percent carbon by weight is considered to be critical for his "friction article." Therefore, the friction modifier could never exceed twenty weight percent even with all other material (hydrogen and oxygen) driven off. Nitz discloses that "other material" cannot be driven off and that it amounts to about 8% by weight. We hold, therefore, that the claim language "up to 12% by weight" of modifier sets forth a material limitation.

Ehrenreich discloses using up to seven volume percent friction modifier. The parties agree that seven *volume* percent ditungsten boride (Ehrenreich's only relevant friction modifier) is the same as forty-eight *weight* percent of the modifier, leaving a maximum possible carbon content of ninety-three volume percent (fifty-two weight percent), assuming the absence of other materials.

We are not convinced by Ehrenreich's argument that fifty-two weight percent is "substantially all carbon." To subscribe to Ehrenreich's construction of "substantially all carbon" would be to close our eyes to the patentee's stated meaning of the phrase and would further ignore the plain meaning of the words themselves. Reading the varied limitation on the amount of friction modifier *in pari materia* with the rest of the claim language, we conclude that the variation reflected in the count, "up to about 48% by weight" of modifier, is a material variation and the count is therefore drawn to a different invention.

Accordingly, no interference in fact exists on count 1 and the board's award of priority thereon must be vacated.

### (3) *Count 2*

The only issue on count 2 involves the deletion of "woundup" from patent claim 13 in drafting that count. Nitz argues that no interference in fact exists because he claims the "woundup" structure and Ehrenreich discloses only a laminate structure.

■ Both Nitz and Ehrenreich, however, disclose the two structural species of woundup layers and laminate sheets as alternative article constructions. Materiality of a limitation omitted from a patent claim is judged by whether that limitation is a material aspect of the patentee's invention. *Brailsford v. Lavet,* supra. That the count is of greater breadth than that of the corresponding patent claim is in this case of no moment. Nitz's specification describes the "woundup" structure as "one preference" and the laminate structure as "another preference."

■ The definitions of the substantially same inventions of Nitz and Ehrenreich appearing in patent claim 13 and in count 2 differ in scope alone. The structure of woundup layers has been shown to have existed in the prior art and limitation thereto is not necessary for patentability of the claim. As we said in *Wetmore v. Miller,* 477 F.2d 960, 963–64, 177 USPQ 699, 701 (Cust. & Pat.App.1973):

[T]he additional restrictions imposed on appellant's claims by the word "fusible" amounts [sic] to a difference in scope alone. The count has necessarily been considered allowable over the prior art and is broader than appellant's claims 12, 22 and 23. Therefore, the "fusible" limitation of appellant's claims must be regarded as not necessary to patentability and not "material" for present purposes. See *Stalego v. Heymes,* supra [263 F.2d 334, 46 CCPA 772, 120 USPQ 473 (1959)], wherein the question whether claims are drawn to substantially the same subject matter is equated to whether the differences are material.

Because "woundup" is not a material limitation of patent claim 13, its deletion could not be a material modification of that claim and no need exists to undertake the second inquiry referred to above. We hold, therefore, that there is an interference in fact on count 2 and affirm the board's decision thereon.

### *Taxation of Costs*

On April 26, 1976, Nitz filed a "Motion to Assess Appellee Printing Costs," alleging that certain portions of the record designated by Ehrenreich for printing were unnecessary. We do not consider those portions to have been unnecessary and accordingly deny the motion.

*MODIFIED.*