David AELONY and William J. McKillip, Appellants,

v.

URS ARNI et al., Appellees.

Patent Appeal No. 76–639.

United States Court of Customs and Patent Appeals.

Jan. 19, 1977.

Virgil H. Marsh, Washington, D. C., Fisher, Christen & Sabol, Washington, D. C., attys. of record, for appellees.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Associate Judges.

LANE, Judge.

Aelony et al. appeal from the decision of the Patent and Trademark Office (PTO) Board of Patent Interferences (board) awarding priority of invention to Arni et al., the senior party. We affirm.

### Background

This case involves a chemical interference between Aelony et al., junior party patentee, and Arni et al., senior party applicant.[1] The subject matter of the interference is a method for purifying malononitrile containing, as contaminants, similarly-boiling impurities formed in the preparation thereof. Both parties treat the impure malononitrile with a conjugated diene material to effect adduction of the impurities in accordance with the Diels-Alder reaction.[2] Once the impurities are thus converted to higher boiling derivatives, pure malononitrile is recovered by distillation. Aelony et al. employ only one conjugated diene, viz., cyclopentadiene, whereas Arni et al. recite eight other materials in their claims, viz., butadiene, isoprene, dimethylbutadiene, piperylene, anthracene, pe-

Burton A. Amernick, Pollock, Vande-Sande & Priddy, Washington, D. C., attys. of record, for appellants; William Kammerer, Columbus, Ohio, of counsel.

1. The Aelony et al. patent, U.S. 3,616,269 assigned to Ashland Oil, Inc., issued October 26, 1971, on an application filed July 10, 1969. The patent is entitled "Method for the Purification of Malononitrile by the Addition of Cyclopentadiene Followed by Distillation." The Arni et al. application, entitled "Process for the Production of Malonic Acid Dinitrile and Purification Thereof," is a division of serial No. 822,724 filed May 7, 1969, which issued April 11, 1972, as U.S. 3,655,721 assigned to Lonza Ltd. Arni et al. became senior party by being accorded the benefit of their parent application filing date.

2. The *Diels-Alder reaction*, discovered by Diels and Alder (1928), consists in adding a conjugated diene to an ethylenically unsaturated compound, such as maleic anhydride:

butadiene   maleic anhydride

resulting adduct

rylene, furan, and sorbic acid. All nine materials are recited in a Markush group in each of the five phantom counts,[3] counts 1 and 3 being illustrative:

    1. A method of purifying malononitrile containing as contaminants similarly boiling dienophiles formed in the preparation thereof which comprises contacting the impure malononitrile with a member selected from the group consisting of butadiene, isoprene, dimethylbutadiene, piperylene, anthracene, perylene, furan, sorbic acid and cyclopentadiene to effect adduction of said dienophiles and thereupon distilling the adduction reaction mixture to recover an overhead malononitrile fraction having a substantially reduced content of said dienophiles.

    3. A method in accordance with count 2 [depends from count 1] wherein the adduction of said crude malononitrile is effected at ambient temperature.

## The Board

Neither party took testimony before the board. Aelony et al. urged that cyclopentadiene is patentably distinct from the mutually exclusive materials of Arni et al., as employed in the purification method of the counts, and hence there is no interference in fact. However, the board viewed the above as mere allegation by Aelony et al., unsupported by evidence in the inter partes proceeding. In the board's view, both parties carry out substantially the same process, differing only in what appears to be a patentably insignificant way. Moreover, Aelony et al. did not seek, as they might have, to establish the alleged uniqueness of cyclopentadiene by appropriate inter partes tests. Accordingly, the board determined that there is an interference in fact and awarded priority to the senior party, Arni et al.

## Issue

The sole issue before us is whether there exists an interference in fact.[4]

## OPINION

### Jurisdiction

    Initially, we note that Aelony et al., almost as an afterthought at the end of their brief before us, raise a jurisdictional

---

Various conjugated dienes react, albeit with differences in the degree of readiness of combination. Thus, butadiene, isoprene, dimethylbutadiene, piperylene, anthracene, perylene, furan, sorbic acid, and cyclopentadiene are exemplary of the dienes expected to react in the Diels-Alder reaction. The parties here are applying the reaction to remove impurities such as fumaronitrile and maleonitrile, which are ethylenically unsaturated and hence will undergo reaction, from the desired malononitrile, which is saturated and will not undergo reaction. See further L. Fieser & M. Fieser, Organic Chemistry 310–12 (3d ed. 1956) and U.S. 2,264,354 of record, issued to Alder et al.

**3.** Phantom count practice, which is employed by the PTO under certain circumstances in order to formulate a suitable count for interference purposes, is discussed extensively in section 1101.02 of the Manual of Patent Examining Procedure (3d ed.).

**4.** In order to emphasize the alleged patentable distinction of cyclopentadiene, Aelony et al. argue before us that cyclopentadiene is used at ambient temperature, whereas Arni et al.'s disclosure *does not support* "ambient temperature" as recited in count 3. In this manner, Aelony et al. belatedly raise a right-to-make issue. Insofar as we can determine, this issue was not raised before the board, and the board did not consider it. Accordingly, the issue of right to make is not before us.

In this regard, Aelony et al. previously brought a motion to dissolve under 37 CFR 1.231(a)(1) on the ground that there is no interference in fact. Aelony et al. did *not* move to dissolve on the ground that Arni et al. have no right to make, an entirely distinct issue. Accordingly, since Aelony et al. gave no reasonable excuse for not raising the issue of right to make by motion, they were not entitled to raise the issue before the board under 37 CFR 1.258(a). See *Fredkin v. Irasek*, 397 F.2d 342, 55 CCPA 1302, 158 USPQ 280 (1968); *Strashun v. Dorsey*, 345 F.2d 201, 52 CCPA 1726, 145 USPQ 476 (1965); *Franklin v. Hopper*, 312 F.2d 949, 50 CCPA 931, 136 USPQ 454 (1963); *Zoiss v. Nix*, 185 USPQ 419 (Bd.Pat.Int'f.1974).

37 CFR 1.231(a)(1) and 37 CFR 1.258(a) read as follows:

§ 1.231 *Motions before the primary examiner.*
    (a) Within the period set in the notice of interference for filing motions any party to an interference may file a motion seeking:
    (1) To dissolve as to one or more counts, except that such motion based on facts sought to be established by affidavits, declarations or evidence outside of official records and printed publications will not normally be considered, and when one of the parties to

question. Specifically, Aelony et al. question the board's jurisdiction (and inferentially ours as well) to resolve this interference, since its resolution involves patentability questions. *First,* this court has traditionally assumed jurisdiction and resolved interference-in-fact questions in priority disputes where it was essential to determine whether or not particular limitations had patentable significance in view of the prior art. See *McCabe v. Cramblet,* 65 F.2d 459, 20 CCPA 1220, 18 USPQ 71 (1933), where the facts are strikingly similar to those at bar. See also note 9 of *Brailsford v. Lavet,* 318 F.2d 942, 945–46, 50 CCPA 1367, 1372, 138 USPQ 28, 31–32 (1963), wherein the *McCabe* case is quoted with approval. *Second,* we stated recently in *Nitz v. Ehrenreich,* 537 F.2d 539, 543, 190 USPQ 413, 416 (CCPA 1976), that:

> [T]he existence or nonexistence of interfering subject matter goes to the very foundation on which an interference rests. Determination of the presence or absence of interfering subject matter is

"logically related" to the jurisdiction-conferring issue of priority because that determination necessarily precedes a priority award. Accordingly, we conclude that the question of interference in fact presented in this case is one ancillary to priority and may be properly considered by this court. [Citations and footnote omitted.]

We further stated in *Nitz,* 537 F.2d at 543, 190 USPQ at 417:

> [I]nterference in fact is an issue ancillary to priority which the board may decide at final hearing and this court may determine on appeal.

Accordingly, we conclude that the interference-in-fact issue before us is an issue ancillary to priority, which the board had jurisdiction to resolve and which this court has jurisdiction to review on appeal.

*Interference in Fact*

Turning to the merits, Aelony et al. argue that the interference was improper *ab initio* under 35 U.S.C. § 135(a)[5] be-

---

the interference is a patentee, no motion to dissolve on the ground that the subject matter of the count is unpatentable to all parties or is unpatentable to the patentee will be considered, except that a motion to dissolve as to the patentee may be brought which is limited to such matters as may be considered at final hearing (§ 1.258). Where a motion to dissolve is based on prior art, service on opposing parties must include copies of such prior art. A motion to dissolve on the ground that there is no interference in fact will not be considered unless the interference involves a design or plant patent or application or unless it relates to a count which differs from the corresponding claim of an involved patent or of one or more of the involved applications as provided in §§ 1.203(a) and 1.205(a).

§ 1.258 *Matters considered in determining priority.*

(a) In determining priority of invention, the Board of Patent Interferences will consider only priority of invention on the evidence submitted. Questions of patentability of a claim generally will not be considered in the decision on priority; and neither will the patentability of a claim to an opponent be considered, unless the nonpatentability of the claim to the opponent will necessarily result in the conclusion that the party raising the question is in fact the prior inventor on the evidence before the Office, or relates to mat-

ters which have been determined to be ancillary to priority and must be considered. A party shall not be entitled to raise such nonpatentability unless he has duly presented a motion for dissolution under § 1.231 upon such ground or shows good reason (e. g., that such nonpatentability became evident as a result of evidence extrinsic to an involved application) why such a motion was not presented; however, to prevent manifest injustice the Board of Patent Interferences may in its discretion consider a matter of this character even though it was not raised by motion under § 1.231.

5. 35 U.S.C. § 135(a) reads as follows:

Whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere with any pending application, or with any unexpired patent, he shall give notice thereof to the applicants, or applicant and patentee, as the case may be. The question of priority of invention shall be determined by a board of patent interferences (consisting of three examiners of interferences) whose decision, if adverse to the claim of an applicant, shall constitute the final refusal by the Patent and Trademark Office of the claims involved, and the Commissioner may issue a patent to the applicant who is adjudged the prior inventor. A final judgment adverse to a patentee from which no

cause the cyclopentadiene material employed by Aelony et al. does not overlap the eight materials employed by Arni et al. Accordingly, say Aelony et al., there is no interference in fact. We disagree. We first note two published board opinions which addressed this same argument of no overlap, asserted in the same context as in the present case, viz., *Dewilde v. Leigh*, 191 USPQ 256 (PTO Bd.Pat.Int'f.1976); *Moore v. McGrew*, 170 USPQ 149 (Bd.Pat.Int'f. 1971). In each case, the board ruled that the test of interference in fact is *not* whether two sets of claims overlap, but whether they are patentably distinct from each other. In each case, the board found that, although the two sets of claims before it were mutually exclusive, they were patentably indistinct, and hence there was an interference in fact. We believe that these board precedents correctly set forth the test of interference in fact and are grounded on sound policy considerations.[6] Sections 102, 103, and 135 of 35 U.S.C. clearly contemplate—where different inventive entities are concerned—that only one patent should issue for inventions which are either identical to or not patently distinct from each other. Hence, we view the phantom count practice as a proper procedural tool established by the PTO in order to ensure, where necessary, what the statute intends, viz., that only one patent should issue for one inventive concept. Moreover, we believe that there is ample precedent from this court for framing the test of interference in fact in terms of whether two sets of claims are patentably distinct from each other. See the *McCabe* case, subsequently quoted with approval in *Brailsford v. Lavet* and in *Nitz v. Ehrenreich*, all three cases cited supra.

■ In the specific facts before us, both parties carry out the same process in which a conjugated diene material reacts with impurities according to the Diels-Alder reaction, followed by distillation of the target compound, pure malononitrile. The cyclopentadiene of Aelony et al. and the eight conjugated dienes of Arni et al. are all common Diels-Alder dienes (see note 2, supra), a fact not disputed in this proceeding. In the absence of evidence to the contrary, we view cyclopentadiene and the eight dienes of Arni et al. as patentably indistinct as employed in the purification method of the counts. We conclude that both parties are claiming the same inventive concept, and accordingly there is an interference in fact.

Aelony et al. argue that the PTO, by declaring this interference with phantom counts, in effect relied upon the equivalency between cyclopentadiene and the conjugated dienes of Arni et al. However, say Aelony et al., it is well established that the doctrine of equivalents has no applicability in interferences, citing *Smith v. Stone*, 420 F.2d 1065, 57 CCPA 884, 164 USPQ 453 (1970); *Wetmore v. Miller*, 181 USPQ 348 (Bd.Pat.Int'f.1973); *Cotton de Bennetot v. Becker*, 157 USPQ 62 (Bd.Pat.Int'f.1967). We believe it sufficient to note that the above cases involve either right-to-make or evaluation-of-evidence problems, which are entirely distinct from the interference-in-fact question before us. See *Brailsford v. Lavet*, supra, note 9 therein, 318 F.2d at 945, 50 CCPA at 1372, 138 USPQ at 31–32.

Aelony et al. also argue that the PTO, by declaring this interference with phantom counts, has attempted to circumvent the "spirit of the law" as set forth in *In re McKellin*, 529 F.2d 1324, 188 USPQ 428 (CCPA 1976). It is apparently Aelony et al.'s contention that Arni et al. are senior party only because Arni et al. were granted the benefit of their Swiss application 9059/68, filed June 18, 1968. Aelony et al. apparently believe that Arni et al.'s invention, based on a foreign priority date, should not bar claims to Aelony et al., even

appeal or other review has been or can be taken or had shall constitute cancellation of the claims involved from the patent, and notice thereof shall be endorsed on copies of the patent thereafter distributed by the Patent and Trademark Office.

6. We note in passing an article in 3 Pat.L. Persp. Section C.1[4] (1971 Dev.) which comments favorably on the *Moore* case.

assuming that Aelony et al.'s claims are obvious variants thereof, under the *McKellin* case. We view this argument as rather contrived and as a distortion of the facts. We believe it sufficient to note that Arni et al. became senior party in this proceeding by being accorded the benefit of their *U.S. parent application*, serial No. 822,724, filed May 7, 1969, which precedes Aelony et al.'s U.S. filing date.

Aelony et al. allege that cyclopentadiene is a uniquely applicable material which can be employed at ambient temperature and short reaction times, resulting in substantial conversion of impurities to higher boiling derivatives. According to Aelony et al., cyclopentadiene is unexpectedly more effective than the materials of Arni et al., and is patentably distinct therefrom. On this point, we agree with the board that Aelony et al. *did not seek*, as they might have, to establish the uniqueness of cyclopentadiene by appropriate inter partes tests. In remarks filed May 10, 1971, during ex parte prosecution of their patent, Aelony et al. generally alleged that cyclopentadiene provides unexpectedly superior results vis-à-vis other common Diels-Alder dienes (including several dienes employed by Arni et al.), but this general allegation was not supported by comparative data. Again, in their motion to dissolve on the ground of no interference in fact under 37 CFR 1.231(a)(1), Aelony et al. failed to proffer any evidence which would support their mere allegation of patentable distinction. Moreover, insofar as we can determine, Aelony et al. did *not petition the Commissioner to review the* decision on motions, 37 CFR 1.244(d).[7] Moreover, Aelony et al. took no testimony before the board. Attached to their main brief before the board, Aelony et al. submitted "Exhibit A," said to be a memorandum from co-inventor Aelony to his counsel demonstrating the unexpected superiority of cyclopentadiene. However, the board properly gave this memorandum no consideration, since it was not introduced into the interference in accordance with 37 CFR 1.271, which reads as follows:

[TESTIMONY IN INTERFERENCES AND OTHER CONTESTED CASES]

§ 1.271 *Evidence must comply with rules.*

Evidence touching the matter at issue which shall not have been taken and filed in compliance with this part will not be considered in determining the interference or other proceeding.

In conclusion, both parties carry out substantially the same process, differing only in what appears to be a patentably insignificant way. Under these circumstances, we believe that the phantom count procedure is proper in order to ensure that only one patent issues for one inventive concept. Moreover, Aelony et al. did not seek, as they might have, to establish the alleged uniqueness of cyclopentadiene by appropriate inter partes test. We hold, therefore, that there is an interference in fact, and the board's award of priority to the senior party, Arni et al. is, accordingly, *affirmed.*

*Affirmed.*

---

7. § 1.244 *Motions; Miscellaneous provisions.*

\* \* \* \* \* \*

(d) There is no appeal from decisions rendered on motions but the Commissioner may consider on petition any matter involving abuse of discretion or the exercise of his supervisory authority, or such other matters as he may deem proper to consider. Any such petition must comply with § 1.181 and, if not filed within 20 days from the decision complained of, may be dismissed as untimely. Any reply thereto must be filed within 20 days from the date of service of the petition.