**Leslie C. CASE, Appellant,**

v.

**CPC INTERNATIONAL, INC., and Commissioner of Patents and Trademarks, Co-Appellees.**

**Appeal No. 83–964.**

United States Court of Appeals, Federal Circuit.

March 5, 1984.

Leslie C. Case, pro se, submitted for appellant.

Joseph F. Nakamura, Sol., and Jere W. Sears, Deputy Sol., Arlington, Va., submitted for appellee, Comm'r of Patents and Trademarks.

Keith V. Rockey, Chicago, Ill., submitted for appellee, CPC Intern., Inc.; George L. Greenfield, Boston, Mass., Ellen P. Trevors, Englewood Cliffs, N.J., of counsel.

Before KASHIWA and NIES, Circuit Judges, and KELLAM,* Senior District Judge.

NIES, Circuit Judge.

This appeal is from the judgment of the United States District Court, District of Massachusetts, entered March 25, 1983, upholding the award of priority to CPC International, Inc., (CPC) in an interference proceeding in the United States Patent and Trademark Office (PTO).

The action was brought in the district court under 35 U.S.C. § 146. Our jurisdiction is based on 28 U.S.C. § 1295(a)(4)(C).

Appellant, Dr. Leslie C. Case, is the owner of U.S. Patent No. 3,510,471 and is the inventor named therein. Dr. Case asserts that an interference between his patent and CPC's application Serial No. 105,684 was improperly declared by the PTO and that the district court erroneously upheld the award of priority to CPC in that proceeding.

Dr. Case puts forth numerous substantive and procedural errors as grounds for reversal of the district court's decision. Having considered each of Case's arguments, we affirm. We also affirm the district court's dismissal of the Commissioner of Patents and Trademarks as a co-defendant.

## Background

The inventions of the parties are directed to polyether polyols.

CPC is the owner of two patent applications relevant here, in both of which Hyman M. Molotsky is the named inventor. On January 3, 1967, the first Molotsky application, Serial No. 606,596, was filed claiming certain starch polyethers and processes for preparing them. The following description is to be found therein:

> Starch is reacted, preferably ... with an alkylene oxide in an autoclave in the presence of an alkaline catalyst .... The reaction is carried out for a sufficient period of time so that the reaction

products obtained are polyethers having an average M.S. of about 3.5 to about 50 or more (the term M.S. is used to denote the moles of alkylene oxide per anhydroglucose unit).

The application also taught that a reactive solvent, for example glycerin, could be used rather than an inert solvent. Example 6 described a polyether polyol prepared by reacting glycerin starch and propylene oxide.

In January of 1971, CPC filed a continuation-in-part application, Serial No. 105,684, containing all of the disclosure of the original, including Example 6, and new disclosure. This application became the application of the subject interference.

Dr. Case's patent was issued on an application filed on March 9, 1967, and is directed to polyether polyols. The polyether polyol claimed in the patent is a mixture produced by reacting a polyalcohol, such as glycerin, and a polysaccharide, such as starch, with an alkylene oxide. The Case patent teaches that the polyalcohols to be oxyalkylated are those aliphatic alcohols containing 3 to 9 carbon atoms and a minimum of 3 OH groups. The claims specify 10 to 95% of oxyalkylated polyalcohol by weight and 90 to 5% by weight of oxyalkylated polysaccharide. Starch is one of the polysaccharides. It is undisputed that the product of Example 6 in CPC's application falls within claim 1 of the Case patent.

In order to provoke an interference with Dr. Case's '471 patent, CPC copied the patent claims into the '684 application. This tactic proved unsuccessful. The examiner of the '684 application rejected the allowance of these claims to CPC under 35 U.S.C. § 112, first paragraph, inasmuch as CPC's disclosure did not support these claims, in particular the weight limitations. The examiner went on to state:

> However, since common subject matter is involved in the above patent and the instant application, applicant is advised to submit claims directed to a polyether polyol which is the reaction product of

---

* The Honorable Richard B. Kellam, Senior District Judge, United States District Court for the Eastern District of Virginia, sitting by designation.

starch and the various disclosed derivatives thereof with glycerin and propylene oxide. See M.P.E.P. 1101.02(f); *In re Ziegler*, 150 U.S.P.Q. 551; Rule 205(a).

\* \* \* \* \* \*

Upon making the said claims, the interference will be instituted on the basis of the corresponding claims of the Case patent as the counts to which applicant's claims will correspond substantially.

After CPC cancelled the rejected claims and submitted other claims in accordance with the above, the subject interference was declared on the basis of "phantom" counts devised by the office to circumscribe what the examiner perceived to be the interfering subject matter. The interference counts here are denominated "phantom" counts because none are the same as claims in either Case's patent or CPC's application. The counts are broader than claims made by either party. Significantly, both the counts and the CPC claims omit the weight limitations ·found in the Case patent claims. This controversy, to a great extent, centers around this omission.

After consideration of many of the arguments raised here, the board awarded priority to CPC and this decision was upheld in the district court. Our reasons for affirmance of the award are set forth below.

I

The award of priority to CPC was determined by the fact that the effective filing date of the CPC application containing the interfering subject matter, January 3, 1967, preceded by three months the filing date of Dr. Case's application leading to the issuance of the '471 patent. Dr. Case offered no evidence to establish an earlier date. Thus, the dispute in this interference is not directed to dates of invention but to collateral matters.

The essence of Case's case is that no interference was properly declared. In particular his arguments center on the propriety of the phantom counts of the interference.

II

■ As an initial matter, Dr. Case argues that the interference was improper because the board refused to review the patentability of the *counts* of the interference over the prior art. The board held that its jurisdiction did not extend to this issue, and we are entirely in agreement. In an interference, the issue is *priority* of invention. 35 U.S.C. § 135.[1] Only that issue and issues ancillary thereto are within the jurisdiction of the Board of Patent Interferences. *Tofe v. Winchell*, 645 F.2d 58, 209 USPQ 379 (CCPA 1981). It is correct that an application may not be placed in interference until it has been examined and the claims therein have been adjudged by the examiner to be allowable but for the issue of priority. However, after the matter reaches the board, the board does not reexamine the issue of patentability over the prior art and, indeed, is jurisdictionally precluded from such reexamination.

■ While the Court of Customs and Patent Appeals has held a number of issues to be ancillary to the issue of priority, patentability of a party's claims over prior art or patentability of the interference counts over prior art has been consistently and firmly rejected as an issue within the board's jurisdiction. *Glass v. De Roo*, 239 F.2d 402, 112 USPQ 62 (CCPA 1956) and cases cited therein; *Kahn v. Phipard,* 397 F.2d 995, 158 USPQ 269 (CCPA 1968); *Tofe v. Winchell*, 645 F.2d at 64, 209 USPQ at 385 (Markey, C.J., concurring). Moreover,

---

1. 35 U.S.C. § 135 reads, in pertinent part:

    (a) Whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere with any pending application, or with any unexpired patent, he shall give notice thereof to the applicants, or applicant and patentee, as the case may be. The question of priority of invention shall be determined by a board of patent interferences (consisting of three examiners of interferences) whose decision, if adverse to the claim of an applicant, shall constitute the final refusal by the Patent and Trademark Office of the claims involved, and the Commissioner may issue a patent to the applicant who is adjudged the prior inventor.

the counts of the interference serve merely as a "vehicle for contesting priority." *Squires v. Corbett*, 560 F.2d 424, 433, 194 USPQ 513, 519 (CCPA 1977). No purpose would be served in determining patentability of the count itself over the prior art, particularly a phantom count, which by definition neither party asserts as a claim.

Despite this authority, appellant asserts that "patentability" is always a threshold issue in an interference. In support of this position appellant makes an elliptic quotation from *Hilborn v. Dann*, 546 F.2d 401, 403, 192 USPQ 132, 134 (CCPA 1976), for the proposition "[T]he 'threshold' question .... is patentability of the count." The quotation merely illustrates the delusion in citing as precedent a sentence from a judicial opinion without regard to the issue before the court. Whether *the board* must determine patentability over prior art in the interference proceeding was not an issue in *Hilborn*. The party Hilborn sought a writ of mandamus to compel resumption of a suspended interference and to preclude review by *the Commissioner* of a decision by the primary examiner that Hilborn's application (which contained the count as a claim) was not entitled to be in the interference. The issue concerned the court's authority to control the Commissioner's exercise of discretion in setting up or dissolving an interference, not the jurisdiction of the board. In any event, the precedent which is controlling has been indicated above.

Dr. Case also asserts that the phantom counts are "so broad as to fail to particularly point out and claim the invention in issue, and the 'phantom' counts are thus unpatentable under 35 U.S.C. § 112."

■ Case confuses "claims" and "counts" throughout his argument but never is wider of the mark than here. The counts are not claims to an invention by either party. The purpose of the count is to determine what evidence is relevant to the issue of priority. *Squires v. Corbett*, 560 F.2d at 433, 194 USPQ at 518–19. 35

U.S.C. § 112, second paragraph, relates only to actual claims.[2] While an attack can be made against the count of an interference because of its breadth, as discussed *infra*, the foundation for this challenge does not lie in 35 U.S.C. § 112.

■ One final "patentability" issue is raised by appellant's argument that CPC failed to name a co-inventor in the Molotsky application. The Court of Customs and Patent Appeals repeatedly held that third party inventorship is not an issue ancillary to priority. *Mortsell v. Laurila*, 301 F.2d 947, 950, 133 USPQ 380, 384 (Cust. & Pat. App.1962). *Schwarzenbek v. Evering*, 357 F.2d 1018, 1021, 149 USPQ 213, 216 (Cust. & Pat.App.1966). We agree with the holdings of the Board of Patent Interferences that the issue of propriety of joinder is basically the same as the issue of third party inventorship and is not ancillary to priority for similar reasons. *See Ziemba v. Richter*, 186 USPQ 551, 553 (Bd.Pat.Int. 1975), *Willis v. Suppa*, 209 USPQ 406, 410 (Bd.Pat.Int.1980).

The decisions of the Court of Customs and Patent Appeals cited on the foregoing issues involved review of the Board of Patent Interferences on a direct appeal under 35 U.S.C. § 141. That the challenge to the board's decision was first made in a district court under 35 U.S.C. § 146 has no effect on the jurisdiction of the board or the applicability of the above principles in this case.

■ We also reaffirm the validity of the practice, specifically endorsed in *Aelony v. Arni*, 547 F.2d 566, 570, 192 USPQ 486, 490 (Cust. & Pat.App.1977), that in appropriate circumstances, phantom counts may be used to define the subject matter of an interference, whether it involves two applications or a patent and an application, and we reject appellant's broadside attack on this procedure. Specifically, we reject Case's contention that an interference could only be declared if CPC copied his patent claims precisely. The import of 35

---

2. The subject provision reads:
    The specification shall conclude with one or more claims particularly pointing out and dis-

tinctly claiming the subject matter which the applicant regards as his invention.

U.S.C. § 135(b) is clearly to the contrary.[3] *See also* 37 C.F.R. § 1.205.

## III

Dr. Case challenges the declaration of the interference on the ground that no interference in fact exists. Relying on *Nitz v. Ehrenreich*, 537 F.2d 539, 190 USPQ 413 (Cust. & Pat.App.1976), Case argues that the question of interference in fact turns on whether or not the weight limitations present in the claims of Case's patent but omitted from the counts are material. We agree with this analysis but we see no departure by the board or the court in stating the law or applying it to the facts of this case.

The question of materiality of the omitted limitations is one of fact, which raises the threshold issue: Which party bears the burden of proof? In effect, a motion to dissolve is an attack on the decision to declare an interference which has been made by the agency and the movant is the proponent of a contrary proposition.

■ In such circumstances we believe the rule must be that the movant who seeks to dissolve an interference must bear the burden of persuasion to show that the omitted limitation is material. *Accord, Aelony v. Arni*, 547 F.2d at 571, 192 USPQ at 490. The board thus, correctly, placed the burden on Case and then found that he had failed to carry that burden, conclusions with which the district court agreed.

■ Turning to the limitations which Case asserts are material aspects of his invention, primarily Case argues that certain weight limitations could not be omitted from the interference counts. However, the court adopted the board's view that the weights were not material because the ranges of the proportions of components in Case's patent claims were very broad and were not pertinent to patentability as shown by the prosecution history. Dr.

Case asserts that the holding cannot stand because he always considered the limitations to be "a necessary and integral aspect of his invention." A merely conclusory statement does not lead us to a firm and thorough conviction that a mistake has been made with respect to the immateriality of the weight limitations. The citation to *Brailsford v. Lavet*, 318 F.2d 942, 946, 138 USPQ 28, 32 (Cust. & Pat.App.1963), where omitted limitations were held to be material, avails nothing to Case. Precedent cannot establish facts.

The second basis asserted for materiality of the limitations is that the "omission of weight limitations leads to a different invention being claimed (namely, no invention whatever)." As previously indicated, the counts are not claims to an invention, but in any event, Dr. Case has not put forth evidence which supports his assertion.

No interference in fact means that there is no interfering subject matter, that Case's patent is no impediment to granting CPC the claims of its application. It was Case's burden to prove that CPC claims a different invention from his own. Case cannot carry that burden with argument that the *counts* are unpatentable.

With respect to other limitations, we need only comment on Dr. Case's assertion that a limitation of 1% water is material to the invention. The patent claims contain no limitation on the percentage of water or, indeed, even a mention of water. Dr. Case would have us incorporate a 1% limitation by reference to his specification. CPC argues that no 1% limitation can be found therein. The issue, however, is materiality and we are unpersuaded that a limitation, if critical, would not be found in the claim. On this point, *McCabe v. Cramblet*, 65 F.2d 459, 18 USPQ 71 (Cust. & Pat.App.1933), is instructive:

Appellant insists that such limitation should be read into the claims, and that when so read, the counts here involved

---

3. 35 U.S.C. § 135(b) reads:

A claim which is the same as, or for the same or substantially the same subject matter as, a claim of an issued patent may not be made in any application unless such a claim is made prior to one year from the date on which the patent was granted.

do not call for the same invention as that embraced in the claims of appellant's patent. However, as said by the Supreme Court in the case of *McCarty v. Lehigh Valley Railroad Company*, 160 U.S. 110 [16 S.Ct. 240, 40 L.Ed. 358], " * * * we know of no principle of law which would authorize us to read into a claim an element which is not present, for the purpose of making out a case of novelty or infringement." If appellant's disclosure in his patent with respect to the two terminals being in relatively close proximity to each other be of patentable significance, that element should have been expressed in the claims of his patent if he desired to receive protection therefor. Appellant having elected to claim the invention broadly with respect to the positioning of the terminals at the points of entering the tube, is not in a position to insist that limitations be read into his claims for the purpose of avoiding the issue of priority. *Deibel v. Heise & Schumacher*, 18 C.C.P.A. (Patents) 907, 46 F.2d 570.

Thus, we find no error in the court's refusal to find the omitted limitations to be material or in its refusal to hold that there was no interference in fact.

### IV

Apart from the propriety of the interference counts, Dr. Case raises a number of arguments that need no more than summary treatment.

█ We agree with the district court that CPC's cancellation of the narrow claims copied from Dr. Case's patent and substitution of claims of broader scope creates no estoppel against CPC's being in the interference on the basis of the broad counts. CPC did not "give up" broad claims to avoid prior art and later seek to assert that narrow claims are the equivalent thereof, which is the usual estoppel situation. He claimed narrowly then more broadly. In any event, Dr. Case is again confusing "claims" and "counts." CPC never claimed and gave up the "counts" and will not obtain the phantom counts as claims in a patent.

We also affirm the district court's rejection of Dr. Case's contention that CPC's application does not satisfy the requirements of 35 U.S.C. § 112, first paragraph.[4] While CPC did not state a specific amount of propylene oxide, the molar substitution (M.S.) specified in Example 6 was adequate for this purpose according to the board and the expert testimony of CPC's witness, Dr. Parmerter. Similarly, the record establishes that one of ordinary skill would have known to stir and vent the mixture. Contrary to appellant's argument, 35 U.S.C. § 112 does not require a specific teaching of that which is already known to one of ordinary skill, nor did the district court reach its conclusions by engaging merely in speculation on these matters.

### V

Case further cites § 112 as requiring that CPC must have support for the limitations of Case's patent claims. This would be correct only if CPC's application now contained claims copied from the Case patent. Section 112 is, as has been indicated, directed to what a party *claims*. Section 112 imposes no additional requirement in an interference that a party must support what his adversary claims but he does not.

As part of his argument under § 112, appellant asserts that CPC's "claim 61" does not support the corresponding count. However, neither claim 61 nor CPC's disclosure must support the phantom count. *Squires v. Corbett*, 560 F.2d 424, 433, 194 USPQ 513, 519 (Cust. & Pat.App.1977). In any event, Case's argument on this point returns to the proposition that the limitations of his claims are material and must be supported by CPC's application, a position we reject. Similarly, Case's argument that

4. 35 U.S.C. § 112 reads, in pertinent part:
  The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, ...

Molotsky's parent application has an inadequate disclosure is rejected. Again, limitations assertedly unsupported are not in CPC's claims.

## VI

■ Dr. Case argues that the board erred in holding for CPC because CPC offered no testimony in the interference. Appellant cites *Aelony v. Arni, supra,* for the restrictive proposition that, for evidence to be considered by the board, it must be in the form of testimony. In Dr. Case's view, since CPC presented no testimony to the board,[5] CPC forfeited any chance to prevail. This argument is wholly fallacious. An interference may be decided simply on the basis of the PTO files of the involved cases. *Aelony* holds no more than that, if additional evidence is present, it must be introduced into the record in accordance with the procedural rules of the board.

Secondly, Dr. Case would have us rule out acceptance by the district court of Dr. Parmerter's testimony which was not presented to the board in view of authority holding that "a deliberate, intentional or willful withholding or suppression of pertinent and available evidence from the Patent Office ... justifies exclusion of such evidence in a [35 U.S.C.] § 146 proceeding." *Kirschke v. Lamar,* 426 F.2d 870, 874, 165 USPQ 679, 683 (8th Cir.1970).

■ The provision of 35 U.S.C. § 146 which provides for review of the Board of Interferences by civil action in a district court explicitly states that the administrative record may be admitted "without prejudice to the right of the parties to take further testimony." We are aware that this provision has received varying interpretations in the circuits.[6] In our view, since an action under 35 U.S.C. § 146 has the hybrid nature of an appeal and a trial de novo, the statute authorizes the district court to accept all proffered testimony on issues raised by the parties during the pro-

ceedings below or by the board's decision. Whether under some circumstances a district court may properly restrict the admission of testimony on an issue raised before the board is not before us. The court here accepted the testimony and we find no error in its doing so.

Other arguments, principally of factual matters, have been adequately dealt with in the decisions below and it would serve no purpose to deal with them in detail here. Accordingly, we will simply state that appellant's arguments of other errors are rejected.

## VII

■ Appellant sought to amend his complaint to bring a suit against the Commissioner of Patents and Trademarks pursuant to 28 U.S.C. § 1346(b), which permits certain tort claims against the Government. The alleged basis for the claim is that the Commissioner erred in instituting the interference, which resulted in an award of priority to CPC. We affirm the holding below that 28 U.S.C. § 1346(b) does not waive governmental immunity from suit with respect to the acts of the Commissioner of Patents and Trademarks complained of by appellant and that the Government was properly not forced to become a party to the action.

## VIII

In sum, since the Case patent and the CPC application contain interfering subject matter, an interference proceeding was appropriate. Second, the counts of the interference were not shown to be improperly drawn. Third, CPC was entitled to an award of priority on the basis of its earlier filed application. Lastly, the Commissioner of Patents and Trademarks was properly dismissed as a co-defendant.

In view of the foregoing, the judgment of the district court is *affirmed.* The parties shall bear their own costs.

AFFIRMED.

5. It must be noted that Dr. Case presented none either.

6. *See* T.J. MacPeak, "Appeal from Decision of the Board," *Interference Practice,* pp. 8–9 to 8–14 (1982) for a review of the case law.