**George S. ALMASI, Hsu Chang, George E. Keefe and David A. Thompson, Appellants,**

v.

**Walter STRAUSS, Appellee.**

**Appeal No. 78–566.**
**Interference No. 98920.**

United States Court of Customs and Patent Appeals.

Jan. 11, 1979.
Rehearing Denied Feb. 22, 1979.

Clyde C. Metzger, Pennie & Edmonds, New York City, attorneys of record, for appellants.

Peter V. D. Wilde, attorney of record, Murry Hill, N. J., for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

Appeal from a decision of the Board of Patent Interferences (board), finding existence of an interference in fact and awarding priority to senior party Strauss. We vacate.

## Background

On September 28, 1971, patent No. 3,609,-720 issued to Strauss for a magnetic domain detector integral with the domain propagation channel. Operation of the detector is based on the planar Hall effect. Claim 1 is illustrative:

> 1. Apparatus comprising magnetic material in a plane in which single wall domains can be moved and having a first surface, a magnetically soft overlay adjacent said first surface, said overlay comprising spaced elements having geometries to move single wall domains from input to output positions in response to a reorienting in-plane field, a plurality of electrical conductors connected to one of said elements at said output position, means for providing an electric current connected to said conductors and means for detecting the effect of a domain on said current.

On September 12, 1972, patent No. 3,691,-540 issued to Almasi et al. (Almasi) for an integrated magnetic bubble domain detector. Operation of the detector is based on magneto-resistance. On March 15, 1973, Strauss filed a reissue application (serial No. 341,490) copying Almasi's claims 8, 9, 13, 14, 17–21, 24, 26, 28, and 29. The copied claims were rejected under 35 U.S.C. § 112, for lack of disclosure of "magneto-resistive sensing means." By amendment Strauss deleted "magneto-resistive" and related limitations. Interference No. 98,920 was declared on February 28, 1975, involving 10 counts. Count 1 (modified Almasi claim 8) is illustrative (omissions bracketed, additions italicized):

A magnetic bubble domain system in which said bubble domains can be non-destructively sensed, comprising:

a magnetic medium capable of supporting single walls [cylindrical] magnetic bubble domains;

[magneto-resistive] sensing means located adjacent said medium for detecting said bubble domains when the magnetic flux of said domains intercepts said sensing means, said magnetic flux being sufficient to change the [resistance] *electrical properties* of said sensing means, wherein said sensing means comprises a [magneto-resistive] sensing element whose [resistance] *properties* depend upon the magnetic flux thereacross, [said sensing elements having a length which is approximately equal to a bubble domain diameter,]

means for establishing current flow through said sensing element, and

means to detect said [resistance] change of said *properties of said* [sensing] element.

Before the interference examiner, Almasi moved under Rule 231(a)(1)[1] to dissolve the interference, alleging unpatentability of the counts to either party in view of the prior art.[2] The motions were transmitted to the primary examiner, who denied them, finding that the counts were patentable over the cited prior art.

Before the board, Almasi again urged dissolution, based on no interference in fact and unpatentability of the counts to both parties. The board declined recommending dissolution under Rule 259,[3] because Almasi's unpatentability argument was "essentially the same * * * [as] that * * * presented and decided adversely to Almasi by the Primary Examiner on motions." The board also refused to consider the question of patentability *per se*, because it was neither relevant nor ancillary to priority. Regarding Almasi's allegation that there was no interference in fact because the counts were unpatentable, the board said:

> [T]he inquiry we make is not whether the broader language of the count is *patentable per se* over prior art but rather,

---

1. Rule 231(a)(1), 37 CFR 1.231(a)(1) reads in pertinent part:

(a) Within the period set in the notice of interference for filing motions any party to an interference may file a motion seeking:

(1) To dissolve as to one or more counts, except that * * * when one of the parties to the interference is a patentee, no motion to dissolve on the ground that the subject matter of the count is unpatentable to all parties or is unpatentable to the patentee will be considered * * *. A motion to dissolve on the ground that there is no interference in fact will not be considered unless the interference * * * relates to a count which differs from the corresponding claim of an involved patent or of one or more of the involved applications as provided in §§ 1.203(a) and 1.205(a).

2. The interference examiner, in transmitting the motions, said:

Strauss, in his opposition, raises the point that the motions to dissolve is [sic] improper inasmuch as Almasi et al. are patentees. However, the clear intent of the statement in 37 CFR 1.231 referred to by Strauss, is to prevent an attack on the validity of a patent claim, inasmuch as the Office has no authority to act against a patent claim. Here, Almasi et al. are ostensibly alleging that the *counts* are unpatentable over the art whereas the patent *claims* corresponding to those

counts remain valid. *This is tantamount to a motion to dissolve on the ground of no interference in fact* [emphasis added] which motion is indeed proper under the Rule [231(a)(1)] where a patentee is involved.

Hence, the issue of no interference in fact was timely raised and is properly before us.

3. Rule 259, 37 CFR 1.259 reads:

The Board of Patent Interferences may, either before or concurrently with their decision on the question of priority, but independently of such decision, direct the attention of the Commissioner to any matter not relating to priority which may have come to their notice, and which in their opinion establishes the fact that no interference exists, or that there has been irregularity in declaring the same, or which amounts to a bar to the grant of a patent to either of the parties for the claim or claims in interference. The Commissioner may suspend the interference and remand the case to the primary examiner for his consideration of the matters to which attention has been directed if such matters have not been considered before by the examiner, or take other appropriate action. If the case is not so remanded, the primary examiner will, after judgment on priority, consider such matters, unless the same shall have been previously disposed of by the Commissioner.

. . . whether or not in view of pertinent prior art the substance of the count makes obvious . . . the substance of the patent claim,

*Nerwin v. Erlichman* (Bd.Pat.Int.1969), 168 USPQ 177, 178.

The board "noted that at column 3, lines 40 et seq. of the Almasi specification it is admitted that magneto-resistive sensing of magnetic domains, albeit not bubble domains, is known * * *," and that "at lines 3 to 13 of column 6, magneto-optic, magneto-strictive, magneto-caloric and 'other effects' are treated as alternatives." Citing the Almasi specification and its prosecution history, the board found no "conclusive indication * * * that the magneto-resistive recitations necessarily constituted a material factor in the examiner's allowability decision." The board therefore viewed the omitted limitations as immaterial, and awarded priority to Strauss.

### Issues

The issue is whether there is an interference in fact.[4]

In *Brailsford v. Lavet*, 318 F.2d 942, 946 n.9, 50 CCPA 1367, 1372 n.9, 138 USPQ 28, 32 n.9 (1963) (emphasis in original), this court stated the test for determining the propriety of claims copied from a patent: "[T]he materiality in proposed counts of portions omitted *from such claims* must be determined *solely* by an analysis of whether such portions defined material aspects *of the patentee's invention.*" The significance of the omitted limitation "magneto-resistive" can best be determined by examination of Almasi's patent.

Three prior art sensing techniques—inductive, Hall effect, and magneto-optical—are variously described in Almasi's patent as slow, not fully compatible with all bubble propagation circuitry, difficult to fabricate,

low in conversion efficiency (large amounts of input power required to obtain usable output signals), low in mobility, and requiring additional equipment. Almasi discloses that the magneto-resistive sensing system of his invention, on the other hand, is fast, fully compatible with existing propagation circuitry, easy to fabricate, high in conversion efficiency, small, and easily mobile. The invention to which Almasi's claims are drawn incorporates all the advantages inherent in a circuit employing magneto-resistive sensing. The invention to which the *counts* are drawn, not being limited to use of magneto-resistance, is subject to the above-listed disadvantages, avoidance of which is achieved by employment of magneto-resistance. Because Almasi's invention may not function as intended when "magneto-resistive" sensing is omitted, that limitation defines a material aspect of the invention.

■ At column 6, lines 3–14 of the patent, Almasi discloses:

In addition to the fact that other materials than permalloy can be used for the magneto-resistive sensing element, it is possible to use other properties than the magneto-resistance. For instance, the presence or absence of bubble domains may be sensed by magneto-optic effects * * *, magneto-strictive properties, magneto-caloric properties, and other effects. Whatever the particular properties used, it is possible to incorporate the sensing element in the propagation means which is used to move the domains in the magnetic sheet.

The board interpreted that paragraph as an indication that properties other than magneto-resistance were equally useful in sensing magnetic bubble domains and relied on it in concluding that "magneto-resistive" was not material. We disagree with the

---

4. Whether the interference is dissolved or the priority award is allowed to stand, Strauss' right to retain claims in his application corresponding to the counts in interference remains unaffected. The status of Almasi's claims involved in interference may, however, be affected. A determination on this appeal that Almasi's claims and the counts are drawn to the

same invention, Strauss' priority being uncontested, would raise a question regarding the validity of Almasi's claims under 35 U.S.C. § 102(g) (statutory bar where applicant is not first to invent) and 35 U.S.C. § 103.

It is unnecessary to discuss the parties' arguments respecting an issue of whether patentability of the counts is ancillary to priority.

board's interpretation. Read in the context of the patent as a whole, the quoted paragraph refers to integration of a sensing element with propagation means, a second invention disclosed by Almasi in the patent.[5] That various sensing means may be integrated with propagation means is not inconsistent with a finding that "magnetoresistive" is a material element of Almasi's invention as claimed.

We conclude, therefore, that counts 1–10, all the counts of the interference, constitute improper modifications of the corresponding claims of Almasi, and hold that no interference in fact exists between the subject matter of the counts and the subject matter of those claims. The decision of the board awarding priority to Strauss is accordingly *reversed*.

*VACATED.*

---

5. A claim drawn broadly to integration of sensing elements and propagation means was submitted, rejected, and abandoned.