**In re VAN GEUNS.**

**No. 91–1088.**

United States Court of Appeals,
Federal Circuit.

Oct. 2, 1991.

Jack E. Haken, U.S. Philips Corp., of Tarrytown, N.Y., argued for appellant.

James H. Marsh, Jr., Staas & Halsey, Washington, D.C., argued for appellee. With him on the brief was James Randall Beckers.

Fred E. McKelvey, Office of the Sol., Arlington, Va., argued for amicus curiae.

Before ARCHER, PLAGER, and RADER, Circuit Judges.

## ORDER

RADER, Circuit Judge.

After an interference in the Patent and Trademark Office (PTO), in which claims corresponding to the interference count were held unpatentable, Johannes R. Van Geuns appealed to this court naming Brown, the other party to the interference, as appellee. The successor in interest to Brown, the other party in the interference, filed a civil action in the United States District Court for the District of Delaware under 35 U.S.C. § 146 (1988). Van Geuns moved this court to enjoin parallel litigation in the district court. Brown opposed Van Geuns' motion and moved to remand Van Geuns' appeal to the PTO. In the alternative, Brown moved to stay this appeal until completion of the district court litigation. Because the Patent Law Amendments Act of 1984 specifically authorized both routes of review, Pub.L. No. 98–622, §§ 201–07, 98 Stat. 3383, 3386–89 (1984), this court denies both motions.

## BACKGROUND

This matter stems from PTO Interference No. 101,855, *Brown v. Van Geuns.* *See* 35 U.S.C. § 135 (1988). The interference involved Van Geuns' patent application, Brown's patent, and Brown's reissue application. In his application, Van Geuns copied some of the claims of Brown's patent and thus provoked the interference.

The interference count concerned a magnetic superconducting coil apparatus. Each party claimed "[a] magnet assembly comprising a first superconducting coil assembly ... and a second superconducting coil assembly...." The Board of Patent Appeals and Interferences (Board) determined that Van Geuns' application claims 22–47, Brown's patent claims 1–10, and Brown's reissue claims 1–16 corresponded to the count.

On September 25, 1990, the Board determined that the subject matter of the count was unpatentable for obviousness in light of a German reference and a Japanese reference. Therefore, the Board entered "judgment against the parties" on the unpatentable claims. The Board also rejected several other challenges by Brown to the propriety and accuracy of the Board's decision.

Van Geuns appealed to this court under 35 U.S.C. § 141 (1988). Van Geuns' appeal alleges that the Board "erred in finding that the Count of the Interference" and Van Geuns' claims 22–47 are unpatentable under 35 U.S.C. § 103 (1988). Brown, however, did not appeal to this court. Rather Brown's assignee, Oxford Advanced Technology, Ltd., filed suit against Van Geuns' assignee, U.S. Philips Corporation, in the Delaware district court under 35 U.S.C. § 146. *Oxford Advanced Technology Ltd. v. Philips Corp.,* No. 90–680 (D.Del. filed Nov. 20, 1990).

Brown's district court complaint alleges that the Board incorrectly held Brown's patent claims 1–10 and reissue application claims 1–16 unpatentable. The complaint also alleges that the Board improperly: (1) declined to reconsider the examiner's decisions, (2) held that Van Geuns' application disclosure satisfied 35 U.S.C. § 112, and (3) rejected Brown's allegation that Van Geuns acted inequitably during prosecution of the Van Geuns application. The district court action seeks entitlement to Brown's claims 1–10 and issuance of claims 1–16 of Brown's reissue application as a patent. At oral argument, this court learned that Van Geuns has asserted a counterclaim in the Delaware district court.

## HISTORY OF INTERFERENCE PRACTICE

The history of interference practice puts this matter in perspective. *See, e.g.,* Rivise & Caesar, *Interference Law and Practice,* Vol. 1, § 2 (Michie Co.1940); Klitzman, *Patent Interference Law and Practice* (1984) and Supplement (1985). In the decade before 1939, a single examiner made the initial decision in an interference proceeding. This examiner decided questions of both patentability and priority. A party could appeal the examiner's decision to the Board of Appeals. The party could then appeal the Board's decision to the Court of Customs and Patent Appeals (CCPA), *see, e.g.,*

*Rudolph v. Gawiler,* 88 F.2d 993, 24 C.C.P.A. 1121, 33 USPQ 225 (1937), or sue in equity in a district court, *see, e.g., Wettlaufer v. Robins,* 92 F.2d 573, 575–76, 35 USPQ 254, 256 (2d Cir.1937).

In 1939, Congress changed this procedure. The 1939 Act instructed the Commissioner of Patents to "direct a board of three examiners of interferences to proceed to determine the question of priority of invention." Act of Aug. 5, 1939, Ch. 451, § 1, 53 Stat. 1212. This new procedure created a separate board to consider priority questions. Moreover, an appeal from this interference board went directly to the CCPA, rather than to the Board of Appeals. *Id.,* §§ 3–4; 35 U.S.C. § 59(a) (1939). This change abolished the Board of Appeals' jurisdiction over interference appeals. The Board of Appeals' sole function after 1939 was to decide *ex parte* appeals on patentability. Thus, the Board of Patent Interferences decided priority; the Board of Appeals decided patentability.

The 1952 Patent Act maintained the distinction between the Board of Appeals and "a board of patent interferences." Act of July 19, 1952, Pub.L. No. 593, § 135, 66 Stat. 801–02. Two separate boards continued to operate within the PTO.

PTO policy gave precedence to the patentability question. 37 C.F.R. § 1.201(a) (1984). An application could create an interference only when its claims were patentable to the applicant. *See, e.g., Brenner v. Manson,* 383 U.S. 519, 86 S.Ct. 1033, 16 L.Ed.2d 69 (1966). Therefore, if interference proceedings uncovered information raising questions about the patentability over prior art of the interference count, the interference board would step aside pending resolution of the question. The interferences board could resolve some patentability issues designated as "ancillary to priority," *DeGeorge v. Bernier,* 768 F.2d 1318, 1325 n. 4, 226 USPQ 758, 763 n. 4 (Fed.Cir.1985), but questions of patentability over prior art were never "ancillary to priority." *Case v. CPC Int'l, Inc.,* 730 F.2d 745, 748, 221 USPQ 196, 199 (Fed.Cir.), *cert. denied,* 469 U.S. 872, 105 S.Ct. 223, 83 L.Ed.2d 152 (1984). This distinction further complicated the interface between the two boards.

Thus, an interference proceeding might follow a circuitous path. Specifically, a party could move to "dissolve" an interference because an applicant's claims corresponding to the count raised questions of patentability over prior art. 37 C.F.R. § 1.231(a)(1) (1984). The motion to dissolve was then transmitted to a primary examiner. The primary examiner decided the patentability question. 37 C.F.R. § 1.231(d) (1984); *see also,* 37 C.F.R. § 1.237 (1984).

By denying the motion, the primary examiner would return the application to the Board of Patent Interferences for a priority determination. By granting the motion, the primary examiner would dissolve the interference and reject the application as unpatentable. The applicant could then appeal this final *ex parte* rejection to the Board of Appeals. 35 U.S.C. § 134. An adverse decision of the Board of Appeals was subject to judicial review in the CCPA, 35 U.S.C. §§ 141–44, or in the district court, 35 U.S.C. § 145. If the applicant overcame the rejection on appeal, the interference proceedings would be reinstated for a determination of priority.

Under this practice, both priority and patentability proceedings could spring from an interference. The Board of Patent Interferences, however, could not enter a final decision on patentability over prior art. *CPC Int'l,* 730 F.2d at 748, 221 USPQ at 199; *Glass v. DeRoo,* 239 F.2d 402, 44 C.C.P.A. 723, 112 USPQ 62 (1956). The Board of Appeals reviewed questions of patentability.

This split in jurisdiction delayed interferences. An applicant might prosecute a patentability question through several appeals before returning to the Board of Patent Interferences for a determination of priority. *See* 130 Cong.Rec. 28065, 28072, *reprinted in* 1984 U.S.Code Cong. & Admin.News 5836–37.

In 1984, the Patent Law Amendments Act addressed this delay problem. Title II of this Act changed interference procedures. First, Title II combined the Board of Appeals and the Board of Patent Interferences into one Board, the Board of Pat-

ent Appeals and Interferences. Next this Act amended 35 U.S.C. § 135(a) to authorize the new Board to determine both questions of patentability and priority. Finally, the Act gave this court jurisdiction over all appeals from the new Board. 35 U.S.C. § 141–146. This court could, therefore, review any matter decided by the Board in an interference.

The language of the 1984 amendments left no doubt about Congress's intent to streamline interference procedures. The legislative history confirms this intent. In its report on S. 1535, the Senate Judiciary Committee stated:

> [D]elays in issuing a patent due to lengthy interference proceedings are harmful to both applicants and the public. ... The Committee finds, however, that one of the reasons for the lengthy proceedings in the PTO is a jurisdictional problem. By statute, the tribunal responsible for determining patentability is the Board of Appeals. The statutory tribunal for determining priority in an interference proceeding is the Board of Patent Interferences. The Board of Patent Interferences is not authorized to address questions of patentability of the invention. This statutory jurisdictional problem is eliminated through the merger of these two boards.

S.Rep. No. 98–663, 98th Cong., 2d Sess., 18 (1984).

In the House, H.R. 6286 was introduced on September 20, 1984, a short time before it passed the House on October 1. Therefore, in lieu of a Committee report, the Subcommittee Chairman presented a section-by-section analysis of the bill before the House vote:

> By combining the two Boards into a single Board having jurisdiction to consider priority and patentability, it is expected that interferences will become simpler, more expeditious, and less costly. Under the bill, all issues of patentability and priority which arise in an interference can be decided in a single proceeding rather than in a series of complicated *inter partes* and *ex partes* proceedings. [Citations omitted.] The Patent and

Trademark Office and reviewing courts will no longer have to decide whether an issue is "ancillary to priority."

130 Cong.Rec. 28,065, 28,072 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 5827, 5837 (citations omitted). Thus, under the 1984 Act, the new Board retained full authority to resolve *ex parte* appeals. The new Board, however, gained authority to resolve patentability issues within an interference proceeding.

In this matter, the Board rejected as unpatentable during the interference proceeding both Brown's patent and Van Geuns' application. Van Geuns appealed to this court. Brown, however, sought review in the Delaware district court. Van Geuns moved this court to enjoin Brown's district court proceeding. Brown opposed Van Geuns' motion and moved this court either to remand the Van Geuns' appeal to the PTO or to stay this case pending resolution of the district court action. Van Geuns sought permission to reply to Brown's opposition.

## VAN GEUNS' MOTION TO ENJOIN BROWN'S DISTRICT COURT LITIGATION

█ Van Geuns asks this court to enjoin Brown from proceeding in the Delaware district court. The 1984 amendments preserved the option of a party to seek review of the Board's interference proceeding either in this court or in a proper district court. The 1984 amendments specifically amended section 141 to permit a "party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences ... [to] appeal the decision to the United States Court of Appeals for the Federal Circuit...." 35 U.S.C. § 141.

The 1984 amendments also amended section 146 to permit "[a]ny party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences ... [to seek] remedy by civil action...." 35 U.S.C. § 146. By amending both sections 141 and 146, Congress explicitly preserved both routes for review of a Board interference proceeding.

The legislative history of the 1984 amendments confirms Congress's intent to retain both routes of review. As noted above, the section-by-section analysis of the H.R. 6286 stated:

The Patent and Trademark Office *and reviewing courts* will no longer have to decide whether an issue is "ancillary to priority."

130 Cong.Rec. 28,065, 28,072 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 5827, 5837 (emphasis added). This passage refers to "reviewing courts" in the plural. This use of the plural shows that the House understood that H.R. 6286 would provide parties a choice of seeking review of the Board's decisions by direct appeal to this court or by appeal to this court after an initial suit in a district court.

By the terms of the statute, both Brown and Van Geuns had the right to seek direct review in separate courts, the district court and this court. Neither party can successfully argue that the statute compels a single route for review of interference proceedings. Moreover, because the statute expressly provides the alternative routes for review of a Board decision, this court cannot foreclose either route. The law affords parties a choice; this court should not presume to restrict their legal options.

Section 141 contains a removal procedure under which a party to an interference who has appealed to this court may be required to proceed instead in a district court. Because that procedure was not involved in this case, we need not decide whether removal to the district court can be required under section 141 when the sole issue appealed to this court is patentability.

■ To promote efficient judicial management and conservation of scarce judicial resources, this court may enjoin parties under its jurisdiction from proceeding with a concurrent action involving the same or related issues. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463, 15 USPQ2d 1554, 1557 (Fed.Cir.1990); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1418 (1990). In deciding whether to enjoin concurrent litigation, this court must determine whether resolution of this case disposes of the other litigation. *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). Therefore, this court must determine whether both actions involve the same parties and issues.

■ To determine the parties in Van Geuns' appeal to this court, this court must examine closely the nature of the action and the relief Van Geuns seeks. While the 1984 Act preserved two avenues of review of an interference, nothing in the language of the 1984 amendments or its legislative history shows that Congress intended to alter the forms of those proceedings. Under those two review routes, a party could appeal to this court or file a complaint in a district court. Congress did not indicate any intent to alter appeals to this court on the patentability question.

Because his appeal to this court contests only the Board's patentability determinations on claims corresponding to the interference count, Van Geuns' case takes the form of a traditional *ex parte* appeal to this court from a Board determination. Specifically, Van Geuns' appeal features no adverse entity other than the Commissioner. Brown does not oppose Van Geuns on the question of the interfering subject matter's patentability. Both contend that the interfering claims are patentable. As in all *ex parte* cases, the entity adverse to Van Geuns is the PTO Commissioner. The Commissioner refuses to grant Van Geuns a patent because the Board found Van Geuns' claims unpatentable in an interference. Thus, the Van Geuns' appeal presents the same issues with the same adverse entities as other *ex parte* appeals.

The district court complaint, however, features different issues and different parties. Brown is not a party to Van Geuns' appeal in this court on patentability of Van Geuns' claims. Brown's successor is a party in the Delaware district court case. Therefore, the parties in the two cases are different. Moreover the Delaware district court case raises issues beyond the purview of Van Geuns' case. In the first place, Brown's successor seeks district court review of the Board's determination that

Brown's claims, not those of Van Geuns, are unpatentable. Further, Brown's successor contests the propriety of the Board's rejection of Brown's charges of inequitable conduct against Van Geuns. Because Van Geuns' case in this court does not feature the same parties or issues as the district court case, this court declines to enjoin the district court litigation. This court's decision also comports with the 1984 Act which specifically preserved alternative review routes to this court and district courts.

 This court must also address one further point concerning Van Geuns' ongoing appeal in this court. Section 143 of Title 35 governs the proceedings of cases on appeal:

> In an ex parte case, the Commissioner shall submit to the court in writing the grounds for the decision of the Patent and Trademark Office, addressing all the issues involved in the appeal.

35 U.S.C. § 143. Thus, the Commissioner must furnish this court a brief justifying the Board's decision to deny Van Geuns' application.

### BROWN'S MOTION TO REMAND

 Van Geuns opposed Brown's motion to remand to the PTO. Van Geuns elected instead to pursue an appeal in this court. Van Geuns will have the opportunity to prosecute his appeal in this court. Brown, however, is not a party before this court. Therefore Brown may not move to remand a case to which he is not a party.

### CONCLUSION

By authorizing parallel and simultaneous routes of review for a Board interference decision, the 1984 Act may have prolonged judicial processes at the same time it streamlined the administrative process. Nonetheless, the 1984 Act authorized the appeals taken by Van Geuns and Brown. Both parties have properly sought review of the Board's decision in different courts.

IT IS ORDERED THAT:

(1) Van Geuns' motion to enjoin is denied.

(2) Van Geuns' motion for leave to file a reply is granted.

(3) Brown's motion to remand is denied.

(4) Brown's motion to stay this appeal is denied.

(5) The caption of this appeal is changed to "In re Van Geuns." This appeal shall proceed according to the usual practice pertaining to *ex parte* appeals from the Patent and Trademark Office on the issue of the patentability of claims.