**Jinn F. WU, Appellant,**

v.

**Ching-Rong WANG, Appellee.**

**No. 96–1492.**

United States Court of Appeals,
Federal Circuit.

Nov. 6, 1997.

Robert V. Vickers, Vickers, Daniels & Young, Cleveland, OH, argued for plaintiff-appellant.

Richard E. Fitcher, Bacon & Thomas, of Alexandria, VA, for appellee. Of counsel was Charles R. Wolfe, Jr.

Nancy J. Linck, Solicitor, U.S. Patent and Trademark Office, Arlington, VA, for the Commissioner of Patents and Trademarks. Of counsel were Albin F. Drost, Deputy Solicitor, Linda Moncys Isacson and Craig R. Kaufman, Associate Solicitors.

Before MICHEL, LOURIE and BRYSON, Circuit Judges.

## ON MOTION

LOURIE, Circuit Judge.

### ORDER

This order decides motions made in an appeal from a decision of the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences. *Wang v. Wu*, Interference No. 102,654 (July 19, 1996). The Board held that both Chin–Rong Wang's sole claim and all but two of Jinn F. Wu's claims corresponding to the count in the interference were unpatentable. The Board also held that Wu's two remaining claims corresponding to the count were patentable. Wu appealed the Board's decision as to his disallowed claims to this court. Wang chose not to appeal or cross-appeal in this court, opting to file a notice with the Commissioner that he elected to have all further proceed-

ings conducted in a district court as provided for in section 146. *See* 35 U.S.C. § 141 (1994) (providing for election by an "adverse party" to an interference). Wang then himself sought remedy by civil action in the United States District Court for the Central District of California under 35 U.S.C. § 146 (1994), challenging, *inter alia*, the Board's conclusion that Wu is entitled to the two claims the Board held to be patentable. Wu now has moved this court to "Refuse Dismissal of this Appeal and to Vacate Improper Notice of Election Under 35 USC § 141." Additionally, Wu has filed a suit in the United States District Court for the District of Columbia, *see* 35 U.S.C. § 141 (requiring the appellant to file a civil action under section 146 within thirty days of an adverse party's notice of election), and has moved here to enjoin Wang from proceeding with his section 146 action in the California district court. Wang opposes both motions.

The dispositive issue in Wu's motions is whether Wang, who effectively conceded before the Board that he is not entitled to a patent on the subject matter of the count in the interference, is nonetheless an "adverse party" within the meaning of 35 U.S.C. § 141 in an appeal limited to the patentability of Wu's claims. We conclude that Wang is an "adverse party" within the meaning of the statute. Accordingly, we deny Wu's motion to vacate Wang's notice of election. In light of Wang's election, and because jurisdiction exists in a district court for actions under 35 U.S.C. § 146, we dismiss Wu's appeal. Because Wu has chosen the United States District Court for the District of Columbia as the venue for the elected proceedings, we grant Wu's motion to enjoin Wang from proceeding with the California action.

## BACKGROUND

Because this appeal arises from a long and complicated interference, we set forth only the facts necessary for the disposition of Wu's motions. Wang received U.S. Patent 4,887,443, which issued from an application filed on April 14, 1989. After learning of Wang's patent, Wu provoked an interference by filing a continuation application, 07/627,-975, which contained a claim copied from

Wang's patent. On August 8, 1991, an Administrative Patent Judge (APJ) declared an interference between claim 12 of Wu's '975 application and claim 1 of Wang's '443 patent. Wu was recognized as the senior party to the interference because his '975 application was entitled to an earlier filing date than that available to Wang based on Wu's grandparent application, 07/287,105, filed on December 20, 1988.

During the preliminary motions period, Wu and Wang filed motions addressing patentability. *See* 37 C.F.R. § 1.633(a) (1997). Wang alleged that both parties' claims were unpatentable over prior art of third parties. Wu alleged that Wang's claim was unpatentable in light of a Wu patent, U.S. Patent 4,935,047, which issued from a continuation of a divisional of Wu's first-filed '105 application.

In 1992, pursuant to 37 C.F.R. § 1.640(d)(1), the APJ ordered Wang to show cause why judgment should not be entered against him on the ground that Wang's claim was unpatentable over the subject matter of Wu's patent. Wang did not do so. Instead, Wang responded that he

> does not wish to request final hearing on the issues of patentability of Wang's claims over prior art at final hearing, nor does Wang wish to take testimony on these issues, unless such action is necessary in order for Wang to remain a party to this interference. It is Wang's desire to be able to present rebuttal to any testimony which the party Wu is permitted to take, and to be able to fully reply to any brief, memorandum, motion or any other paper filed, or any action taken, by the party Wu.

Thus, Wang did not contest priority or argue that the subject matter of his claim was patentable. Instead, he asked to remain in the interference so that he could challenge any patentability arguments made by Wu with regard to Wu's claims. Although the show cause order was later withdrawn as premature, the APJ indicated that when final judgment was entered in the interference, judgment would be entered against Wang due to his failure to respond to the issue raised in the show cause order. *See* 37 C.F.R. § 1.640(e)(4) (1997). Because Wang

did not respond to the merits of the patentability issue, Wang is now estopped from asserting that his claims are patentable. *See Conservolite, Inc. v. Widmayer,* 21 F.3d 1098, 1102, 30 USPQ2d 1626, 1628–29 (Fed. Cir.1994).

After numerous motions and rulings, an additional Wu application, 07/478,411, and Wu's '047 patent, both tracing their lineage to Wu's '105 application, were added to the interference. Subsequently, the interference was redeclared to broaden the count and add additional claims. The claims corresponding to the count of the redeclared interference included claim 1 of Wang's '443 patent, claim 12 of Wu's '975 application, claims 9–11 of Wu's '411 application, and claims 1–4 of Wu's '047 patent. A final hearing before the Board was held on November 17, 1995.

The Board ultimately issued its final judgment on July 19, 1996, entering judgment against Wang, concluding that his sole claim was unpatentable on the ground of anticipation or obviousness in view of Wu's '047 patent, and entered judgment against Wu, concluding that his claim 12, copied from Wang, was unpatentable for failure to comply with the written description requirement of 35 U.S.C. § 112, and also concluding that all of Wu's claims corresponding to the count with the exception of two claims in the '047 patent were unpatentable for obviousness. The Board held that Wu was accordingly entitled to the two surviving claims, claims 1 and 3, of the '047 patent.

On July 25, 1996, Wu appealed to this court, challenging the Board's decision that certain of his claims were found not to be patentable. On August 13, 1996, pursuant to the election provision of section 141, Wang filed a notice to have all further proceedings conducted in a district court under section 146. Additionally, on September 6, 1996, Wang sought remedy in the United States District Court for the Southern District of California under section 146, challenging, *inter alia,* the Board's decision that Wu was entitled to claims 1 and 3 of the '047 patent.

Subsequently, pursuant to Wang's election, and despite Wu's view that his appeal belonged in this court, Wu filed a "protective"

civil action in the United States District Court for the District of Columbia on September 11, 1996, to ensure that he would have a forum in which to challenge the Board's final judgment in the event that we were to dismiss his appeal pursuant to Wang's election. *See* 35 U.S.C. § 141 (stating that if the appellant does not file a section 146 action, "the decision appealed from shall govern the further proceedings in the case").

## DISCUSSION

Prior to the 1984 amendments to the patent statutes, the Board of Patent Interferences determined questions of priority, but did not decide issues of patentability; these issues were decided by the Board of Appeals. *See generally In re Van Geuns*, 946 F.2d 845, 20 USPQ2d 1291 (Fed.Cir.1991); 3 Donald S. Chisum, *Chisum on Patents* §§ 10.02[4]-[6], 10.09[1][b] (1997). Because the resolution of a patentability question took precedence over a priority determination, if issues concerning patentability were raised during an interference, the interference would be stayed and its resolution deferred. Examination would resume *ex parte*, and the applicant could even appeal any *ex parte* rejection to the Board of Appeals. An unfavorable decision of the Board of Appeals was further reviewable either in this court or in a district court. If the matter was resolved in favor of the applicant, only then would the interference resume.

■ The Patent Law Amendments Act of 1984 was designed in part to streamline these procedures. *See* 130 Cong. Rec. 28,-065, 28,072 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5827, 5836-37. The Act consolidated the two boards into the Board of Patent Appeals and Interferences, which now has authority to determine questions of patentability and priority. *See* 35 U.S.C. § 135(a) (1994) (stating that the "Board of Patent Appeals and Interferences shall determine questions of priority of the inventions and may determine questions of patentability"). Thus, under the 1984 Act, the new Board gained authority to resolve patentability issues within an interference. *In re Van Geuns*, 946 F.2d at 848, 20 USPQ2d at 1294;

*see* 37 C.F.R. § 1.633(a) (1997); *see also* 37 C.F.R. § 1.641 (1997). When resolving such issues, the Board "must separately determine the patentability of each claim in the interference, just as it would in an *ex parte* prosecution." *Rowe v. Dror*, 112 F.3d 473, 477, 42 USPQ2d 1550, 1552 (Fed.Cir.1997).

The 1984 Act maintained the respective routes for judicial appeal. It continued to provide for an appeal to this court from a decision of the Board. *See* 35 U.S.C. § 141 (1994). Alternatively, a party may file a civil action in district court pursuant to 35 U.S.C. § 146 (1994): "Any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on the interference, may have remedy by civil action. . . ." Section 141 also provides that an appeal to this court must be dismissed if "any *adverse party* to such interference . . . files notice with the Commissioner that the party elects to have all further proceedings conducted as provided in section 146 of this title." 35 U.S.C. § 141 (emphasis added). An appellant then must file a section 146 action in order to obtain judicial review. *See* 35 U.S.C. § 141.

■ Wu asks that we "vacate" Wang's notice of election and treat his appeal as a simple *ex parte* appeal from an adverse decision by the Board. Wu states that the appeal involves only his challenge to the Board's determination that various of his claims are unpatentable. Wu asserts that claims 1 and 3 of the '047 patent, to which the Board found Wu is entitled, are not at issue in this appeal.

Although the Commissioner is not formally a party to this appeal, we asked him to file a response to Wu's motion. Agreeing with Wu, the Commissioner responded that Wang is not an adverse party within the meaning of section 141 and thus is not entitled to invoke the section 141 election procedure. The Commissioner contends that Wu's appeal, which is limited to his own claims, should proceed as an *ex parte* appeal. Citing *Faure v. Bradley*, 40 Official Gazette Pat. Off. 243 (June 10, 1887), the Commissioner states that for "over one hundred years, the Commissioner's position has been that an applicant

dismissed from an interference has no right to challenge the patentability of the claim to his opponent." Because Wang is estopped from asserting that his claims are patentable, the Commissioner contends that the only remaining action is Wu's *ex parte* appeal relating to the patentability of Wu's rejected claims. The Commissioner asserts that, because the Board's decision entitling Wu to claims 1 and 3 of the '047 patent will "not affect any of [Wang's] legal rights," Wang cannot challenge this determination on appeal.

Wang argues that, although Wu is only contesting some of the Board's rulings, not all of them, his appeal was taken "from the Board's decision in the interference." Thus, Wang maintains that, as a party to the interference, he has a right to challenge any part of the Board's decision with which he is dissatisfied. *See* 35 U.S.C. §§ 141, 146. Wang contends that he would have been entitled to file a cross-appeal here to contest the Board's ruling that claims 1 and 3 of the '047 patent are patentable, a ruling that was part of the Board's final and appealable decision. Instead of filing a cross-appeal, Wang notes that he chose to invoke the election procedure of section 141 and have all review in connection with the Board's decision conducted in a district court.

We agree with Wang that he is entitled to seek a remedy from the Board's final judgment and elect to do so as part of an action brought by Wu in district court under section 146. The Board's final judgment was issued following a final hearing in an interference to which both Wang and Wu were parties. The determinative question is whether Wang is an "adverse" party in light of the Board's final judgment. Pursuant to 37 C.F.R. 1.633(a), Wang filed a motion requesting the Board to declare Wu's claims unpatentable. That motion was denied as to the two claims. Wang was thus an adverse party, having had certain issues decided against him in the interference to which he was a party.

Significantly, the interference was not terminated once it became clear that Wang would not be entitled to a patent. Contrary to the Commissioner's contention, Wang was not "dismissed" from the interference when he failed to respond to the order to show cause on patentability grounds; judgment was not rendered against Wang until the final judgment that is now the subject of the current motions. In the *inter partes* proceeding, Wang and Wu disputed the patentability of Wu's claims. For over three years, from Wang's reply to the show cause order in June, 1992, to the final hearing held in November, 1995, Wang and Wu argued whether the prior art references rendered Wu's claims unpatentable for obviousness. Despite having lost the right to his patent as a result of an adverse decision on patentability, Wang still had an interest in seeing that Wu was likewise not entitled to the subject matter of the interference, albeit on patentability, not priority, grounds. Moreover, *Faure*, cited by the Commissioner, is not applicable to this case because Wang was not dismissed from the interference. *Faure*, of course, is not binding on this court and it has been overtaken by statutory enactment.

The Commissioner directs our attention to *Sperry Rand Corp. v. Bell Telephone Laboratories, Inc.*, 317 F.2d 491, 137 USPQ 497 (2d Cir.1963), in which the Second Circuit dismissed an appeal by a party to an interference who challenged the patentability of the other party's claims. The court reasoned that the challenger lacked standing to appeal because it "[did] not argue that the judgment of the district court invaded any of its rights." 317 F.2d at 493, 137 USPQ at 498. Whatever the merits of that decision, which of course is not binding on this court, we note that it dealt with the predecessor statute to section 146 which provided for remedy by civil action from a board decision only "on the question of priority." Unlike the current statutory scheme, participants in an interference at that time had no right to challenge the patentability of another party's claims in the interference. The current statute provides an administrative procedure by which a party to an interference may challenge the patentability of the claims of another party to the interference. Contrary to Wu's and the Commissioner's contentions, Wang's participation in an *inter partes* proceeding, in which he properly challenged the patentability of Wu's claims, places Wang in a different

position from "the average person on the street."

■ Wu argues that the Board exceeded its discretion when it declined to dissolve the interference once the patentability of Wang's claims was no longer at issue. This argument is without merit. For three years, a central issue in the interference involved the patentability of Wu's claims over the prior art, an issue raised by Wang. Wang therefore was a contending, adverse party to the interference. As we have previously stated, a decision by the Board "of all issues that are fully and fairly raised during the interference proceeding, whether related to patentability or priority, is in full accord with Congressional intent that PTO procedures be simplified as well as improved." *Perkins v. Kwon,* 886 F.2d 325, 328, 12 USPQ2d 1308, 1310 (Fed.Cir.1989).

■ Wu also argues that judicial review of patentability issues under sections 141 and 146 is limited to determinations regarding one's own claims. Citing *Van Geuns,* Wu also asserts that because the interference continued for the sole purpose of deciding the patentability of Wu's claims, Wu's appeal should take the form of a simple *ex parte* appeal. We disagree. The procedural posture of this case differs significantly from that in *Van Geuns.* As noted in that opinion, *Van Geuns* did not involve an election under section 141. There, each party appealed in a court of its own choice, and neither party attempted to force the other into a different forum. In this case, the dispute is between a party who has elected to have all further proceedings conducted in a district court and the other party who was first to appeal and who, following the election, has a right to have those proceedings conducted in a district court of its choice. Furthermore, in *Van Geuns,* both Van Geuns and Brown were in agreement that the interfering subject matter was patentable over the prior art. They were not adverse on that issue. Because Brown did not oppose Van Geuns on the question of the interfering subject matter's patentability, and was not even a party to Van Geuns' appeal, we held that Van Geuns' appeal "takes the form of a traditional *ex parte* appeal." *Van Geuns,* 946 F.2d at

849, 20 USPQ2d at 1295. We recognized that, as in other *ex parte* appeals, the only entity adverse to Van Geuns was the PTO Commissioner.

On the other hand, while the Commissioner and Wu in this case are in agreement that claims 1 and 3 of the '047 patent are patentable, Wang is challenging that decision by the Board. Thus, Wang is adverse to Wu on that issue and Wu's reliance on *Van Geuns* is misplaced. Because Wang was a party to the interference, filed a motion challenging the patentability of Wu's claims, and lost on that issue, Wang is entitled to seek judicial review of the Board's determination of the patentability of Wu's claims. Wang is an adverse party under section 141 and may elect to have all further proceedings continue in the district court, including both Wu's appeal of those claims found not patentable and Wang's challenge to the two claims found patentable to Wu.

■ Finally, Wu moves to enjoin Wang from proceeding with his separate section 146 action in the California district court. Wu argues that, under the statute, he is entitled to choose the forum for the section 146 action. Section 141 provides (with emphasis added) that an adverse party may elect

> to have *all further proceedings* conducted as provided in section 146 of this title. If the appellant does not, within thirty days after the filing of such notice by the adverse party, file a civil action under section 146, the decision appealed from shall govern the further proceedings in the case.

Thus, if the adverse party elects to have all further proceedings conducted in a district court, the statute provides that the appellant must choose an appropriate forum for the proceedings pursuant to section 146 in order to maintain its right of appeal. Because Wu has filed an action pursuant to section 146 in the United States District Court for the District of Columbia within thirty days of Wang's notice of election, the section 146 action resulting from Wang's notice of election must proceed there.

Wang argues that he properly filed a section 146 action in the Central District of

California, that his choice of forum is the most convenient one for the parties, and that adjudication there would serve the interest of judicial economy. We recognize that in other circumstances Wang would have his own right of appeal, choosing his own forum. *See Van Geuns,* 946 F.2d at 849, 20 USPQ2d at 1294. However, Wu appealed first in this case, and once Wang made use of the election procedure, Wu's timely section 146 filing must govern all further proceedings, subject, of course, to the right of any defendant to seek transfer of a case under the appropriate rules of civil procedure. In the absence of such a proper transfer, Wu's choice of forum governs. According to the statute, Wang's election requires this court to dismiss Wu's section 141 action, and Wu's subsequent timely filing in the District of Columbia precludes the District Court for the Central District of California from being the appropriate forum for Wang's section 146 action. Thus, we grant Wu's motion to enjoin the parties from proceeding with the parallel section 146 action in the Central District of California.

Accordingly,

IT IS ORDERED THAT:

(1) Wu's motion to vacate Wang's notice of election is denied.

(2) Wu's motion to enjoin the parties from proceeding in the section 146 litigation in the United States District Court for the Central District of California is granted.

(3) The parties are directed to inform the District Court for the Central District of California of this disposition.

(4) This appeal is dismissed pursuant to Wang's election under 35 U.S.C. § 141.