**Dale R. SCHULZE and Jon A. Sherman, Appellants,**

v.

**David T. GREEN, Henry Bolanos, Robert J. Geiste, Wayne P. Young, Stephen W. Gerry and Frank M. Rende, III, Appellees.**

**No. 97–1219.**

**Interference No. 103,319.**

United States Court of Appeals, Federal Circuit.

Feb. 13, 1998.

---

Keith V. Rockey, Dressler, Rockey, Milnamow & Katz, Ltd., Chicago, IL, argued, for appellants. With him on the brief were John P. Milnamow and Stephen D. Geimer.

Drew M. Wintringham, Chadbourne & Parke, LLP, New York City, argued, for appellees. With him on the brief was Eric J. Lobenfeld. Of counsel on the brief were Rocco S. Barrese, Dilworth & Barrese, Uniondale, NY, and John C. Andres and Neil D. Gershon, United States Surgical Corporation, Norwalk, CT.

Before MICHEL, LOURIE and RADER, Circuit Judges.

MICHEL, Circuit Judge.

Dale R. Schulze and Jon A. Sherman (collectively, "Appellants") appeal the decision of the Patent and Trademark Office's (the "PTO's") Board of Patent Appeals and Interferences (the "Board") entering final judgment against them in an interference on the ground of unpatentability under 35 U.S.C. § 102(f). *Green v. Schulze,* Interference No. 103,319 (B.P.A.I. Nov. 7, 1996) (decision on Final Hearing). Judgment was rendered against Appellants based on the motion for final judgment of the party Green et al.[1] (collectively, "Green" or "Appellees") which asserted that Appellants' failure to refile promptly their motion to correct inventorship during the interference, after their initial filing was dismissed as facially deficient under the regulations, required Appellants' patent application claims to be declared unpatentable in the interference judgment. Appellants timely and properly appealed to this court, and the appeal was submitted for our decision following oral argument on October 9, 1997.

We hold the Board erred in rendering judgment against Appellants because notice that judgment would be based solely on failure to refile during the interference was inadequate. The Board was correct, however, in concluding that Appellants failed to comply with the filing requirements of 37 C.F.R. § 1.48 (1997) and failed to heed the Administrative Patent Judge's (the "APJ's")

---

1. David T. Green, Henry Bolanos, Robert J. Geiste, Wayne P. Young, Stephen W. Gerry and Frank M. Rende, III.

statement that the motion to correct inventorship could· be refiled at any time during the interference. Nevertheless, the APJ never informed Appellants that the issue had to be or at least would be resolved *inter partes,* even though Appellants had advised the APJ that they intended to await the resumption of *ex parte* examination to refile their motion. Because Appellants were entitled to clear notice that they had to make the correction of inventorship *in the interference* and to a reasonable opportunity to do so before final judgment in the interference could be entered against them, the interference judgment is vacated and the case is remanded for the Board to set a fixed period of time for Appellants to renew their motion to correct inventorship.

## BACKGROUND

In March 1994, the PTO declared Interference No. 103,319 between a patent application naming as inventors Schulze and Sherman and U.S. Pat. No. 5,156,315 (the " '315 patent") issued to Green. The '315 patent is assigned to United States Surgical Corporation. Schulze and Sherman, employees of Ethicon, Inc., copied claims from the '315 patent into their pending application in order to provoke the interference. The Count set forth by the PTO corresponded to all of the '315 patent claims and all of the pending application claims.

In June 1994, the parties filed their sealed preliminary statements, and Appellants filed, *inter alia,* a motion under 37 C.F.R. § 1.634 (1997) to correct the inventorship of their application. Appellants represented therein that the invention described by the Count was solely the work and invention of Schulze without the aid of Sherman. Green opposed Appellants' motion to correct inventorship for failure to comply with the filing requirements of 37 C.F.R. §§ 1.48 and 1.639, and also filed a motion requesting a testimony period on the

issue of inventorship. Appellants opposed Green's motion to take testimony. The APJ dismissed Appellants' motion to correct the inventorship without prejudice for failure to comply with the requirements of 37 C.F.R. § 1.48[2] and granted limited testimony on the issue of Appellants' inventorship. *Green v. Schulze,* slip op. at 5, 8 (Feb. 14, 1995) (decision on preliminary motions). In dismissing the motion to correct inventorship, the APJ stated that "[t]he parties are reminded that a motion under 37 C.F.R. § 1.634, since it is not a preliminary motion, *can be* filed or refiled at any appropriate time *in an interference." Id.* at 5 (emphasis added). Appellants, however, did not refile their motion to correct inventorship under 37 C.F.R. § 1.634, nor did ·they request reconsideration under 37 C.F.R. § 1.640(c) (1997) of the decision dismissing their motion.

After the dismissal of the motion to correct inventorship, the preliminary statements were opened and it became apparent that, by Green's own admission, Green could not prevail on priority. Appellants state that in a telephone conference call with the APJ and Green, Appellants suggested that the APJ place Green under an Order to Show Cause and offered to renew their motion to correct inventorship. Green, however, has not pointed to anywhere in the record where the APJ instructed Appellants to refile their motion or suffer adverse judgment. The APJ did place Green under an Order to Show Cause under 37 C.F.R. § 1.640(d)(3) why judgment should not be entered against it on the ground of priority of invention, and the APJ vacated its order granting limited testimony on the issue of Appellants' inventorship. Subsequent to issuance of the Order to Show Cause, Appellants disclosed that they intended to wait until after judgment in the interference and a return to *ex parte* examination to refile their motion to amend inventorship under 37 C.F.R. § 1.48. Thereafter, Green

---

2. As of the filing of Appellants motion, correction of inventorship under 37 C.F.R. § 1.48(a) required:
    1. Diligence
    2. A statement of facts verified by the original named inventors establishing when and how the error occurred without deceptive intent;

3. An oath or declaration by each actual inventor as required by § 1.63;
4. The fee set forth in § 1.17(h); and
5. The written consent of the assignee.
*See* 37 C.F.R. § 1.48(a) (1997).

filed a second motion for testimony on the inventorship issue, which was denied, and a motion for judgment that subject matter corresponding to the Count was unpatentable to Appellants under 35 U.S.C. § 102(f) for failure to recite the correct inventorship in the application.

In August 1995, the APJ deferred decision on Green's motion for judgment until Final Hearing. The Final Hearing was held before a three judge panel of the Board on September 19, 1996, and the Board rendered a Decision on Final Hearing on November 7, 1996, entering judgment against Green for lack of priority and against Appellants for unpatentability under 35 U.S.C. § 102(f) for failure diligently to correct inventorship pursuant to 37 C.F.R. §§ 1.48 and 1.634,[3] *Green,* slip op. at 11–12 (Nov. 7, 1996). One judge on the panel dissented, however, stating that the patentability issue was not ripe for consideration and that Appellants should be given the opportunity to renew their attempt to correct inventorship upon resumption of *ex parte* examination. Alternatively, the dissenting judge would have set a testimony period on the issue of inventorship rather than entering judgment against Appellants. *See id.* at 17 (Caroff, A.P.J., dissenting).

Green does not cross-appeal the decision of the Board effectively canceling its patent on the ground of prior invention; Appellants simply appeal the decision against them for failure to correct inventorship during the interference and, hence to establish patentability. Appellants contend they were entitled to attempt to correct inventorship upon resumption of *ex parte* examination, arguing that Green, having lost on priority of invention, had no assertable legal interest in any impact of correct inventorship on the patentability of Appellants' application claims.

## DISCUSSION

### I. Evolution of the Authority of the Board

Prior to the 1984 Amendments to the patent statute (the "1984 Amendments"), the Board of Patent Interferences decided questions of priority, but not of patentability. Issues of patentability over the prior art were decided only by the Board of Appeals. *See Wu v. Wang,* 129 F.3d 1237, 1240, 44 USPQ2d 1641, 1643 (Fed.Cir.1997) (citing generally *In re Van Geuns,* 946 F.2d 845, 20 USPQ2d 1291 (Fed.Cir.1991), and Donald S. Chisum, Chisum on Patents §§ 10.02[4]-[6], 10.09[1][b] (1997)). Under the old statute and its implementing regulations, if issues of patentability were raised during an interference, the interference would be stayed, examination would resume *ex parte* to resolve the patentability issue, and thereafter the interference proceeding would resume. If other issues of patentability were still pending at the conclusion of the interference, as was often the case, the application was once again returned to *ex parte* examination for resolution of those issues. *See Wu,* 129 F.3d at 1240, 44 USPQ2d at 1643. Often, prosecution of the application included a decision of the Board of Appeals once examination by the examiner was finished. Thus, both boards and the examiner could be called upon in the prosecution of a single application involved in an interference.

Congress became dissatisfied with the inefficiency of this "start-and-stop" process in which a case could "ping-pong" back and forth between interference and examination proceedings. Therefore, in 1984, Congress combined the Board of Patent Interferences with the Board of Patent Appeals to create the current Board of Patent Appeals and Interferences, and also amended 35 U.S.C. § 135(a) to include the following provision: "The Board of Patent Appeals and Interferences shall determine questions of priority of

---

3. Under the version of 37 C.F.R. § 1.48 in effect until December 1, 1997, to correct the inventorship of an application where the error occurred without any deceptive intent, the application could be amended to name the actual inventor, but such an amendment must be made diligently. *See* 37 C.F.R. § 1.48 (1997). As of December 1, 1997, however, the requirement that an amendment of the inventorship under section 1.48 be made "diligently" has been removed. *See* Changes to Patent Practice and Procedure, 62 Fed.Reg. 53,132, 53,138 (1997) (to be codified at 37 C.F.R. pts. 1, 3, 5, 7, and 10). Therefore, on motions to correct the inventorship of an application filed on or after December 1, 1997, diligence is not a requirement.

the inventions and *may determine questions of patentability.*" Patent Law Amendments Act of 1984, Pub.L. No. 98–622, §§ 201–207, 98 Stat. 3383, 3386–89 (1984) (codified as amended at 35 U.S.C. § 135(a) (1994)) (emphasis added). Consolidation of the two boards into one, with authority to consider questions both of patentability and of priority in a unified proceeding, was intended to streamline such proceedings before the PTO. *See* 130 Cong. Rec. 28,065, 28,072 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5827, 5836–37.

## II. Because Appellants Fairly Placed Correct Inventorship at Issue and Possessed the Necessary Facts, the Issue Must Be Decided *Inter Partes*

Appellants rely on *Perkins v. Kwon*, 886 F.2d 325, 328 12 USPQ2d 1308, 1310–11 (Fed.Cir.1989), to argue that the inventorship issue was never fully presented and developed and therefore should not have been decided by the Board. In *Perkins*, we indeed held that "issues of patentability and priority that have been *fully developed* before the Board should be resolved by the Board," *id.* at 328, 12 USPQ2d at 1311 (emphasis added), but we also stated that the legislative history "shows that Congress intended that if patentability *is fairly placed at issue* in the proceeding, it will be determined," *id.* (emphasis added).

### A. Appellants Fairly Raised the Inventorship Issue in the Interference

During the interference, Appellants filed a motion pursuant to 37 C.F.R. § 1.634 to correct the inventorship of their application, i.e., to remove Sherman as a co-inventor. The very filing of this motion fairly placed the issue of the inventorship of Appellants' application in the interference. Pursuant to section 1.634, Appellants were required to follow the filing requirements of section 1.48 in order to be eligible to correct the inventorship of their application. As the APJ correctly found, however, Appellants'

motion was defective under section 1.48 and therefore the APJ could not adjudicate it but could only dismiss it, as he did. A defective motion under the regulation cannot support adjudication of the inventorship issue during the interference. Nevertheless, for the reasons stated *post,* the inventorship issue, having been fairly raised by Appellants, was still within the scope of issues for decision in the interference even after the APJ dismissed the defective motion.

### B. Appellants Already Possessed All of the Evidence on the Inventorship Issue Necessary to Refile Their Motion

Once an issue has been fairly raised during the course of an interference proceeding, the facts relating to that issue should be fully developed so the issue can be properly adjudicated, either by the APJ or by the Board at Final Hearing. If the APJ finds that testimony is needed to decide an issue, he may order the taking of testimony.[4] *See* 37 C.F.R. § 1.639(c). Appellants argue, therefore, that because the APJ vacated his earlier testimony order and then denied Green's second motion for testimony, the inventorship question was not fairly presented and fully developed and therefore the Board should not have decided it. Appellants, however, are incorrect.

Because all of the facts necessary to support a change in inventorship of Appellants' application were already known to Appellants, and those facts could have been presented in a proper motion under 37 C.F.R. § 1.634, Appellants had no need for testimony, and Appellants' argument that the issue of correction of inventorship was not "fully presented" and therefore should not have been decided by the Board must fail. Appellants had all of the pertinent information; if Appellants failed to present some of that information to the APJ or to the Board, they can blame no one but themselves. No further factual development was needed by them, only a perfected motion. Moreover, a party in Appellants' position should not be

---

4. Arguably, that such "discovery" could exceed that available under the Federal Rules of Civil Procedure in any co-pending infringement suit involving the same patent might seem problemat-

ic. In such a case, the concerned party should move to have the APJ limit such testimony only to topics necessary to resolve the contested issue.

permitted to manipulate the interference process by moving to correct inventorship in a defective motion, presumably to meet the requirement of diligence, but failing to refile a proper motion in order to defer the issue so as to escape the rigors of *inter partes* proceedings.[5]

### C. A Patentability Question Fairly Raised and Capable of Being Fully Presented Must Be Resolved *Inter Partes*

■ Appellants raised the issue of proper inventorship, and Appellants had all of the facts necessary to present the issue. Therefore, because Appellants' patentability question of inventorship was fairly raised, could have been and still can be fully presented during the interference, it must be resolved *inter partes*. As the legislative history of the 1984 Amendments reflects, by combining the two boards, "all issues of patentability and priority which arise in an interference can be decided in a single proceeding rather than in a series of complicated *inter partes* and *ex partes* proceedings." *See* 130 Cong. Rec. 28,065, 28,072 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5827, 5836–37.

Furthermore, the PTO has implemented this intent of Congress: "[T]he object of the interference will be to resolve all controversies as to all interfering subject matter defined by one or more counts." Manual of Patent Examining Procedure § 2300.02 (6th Ed.1995 rev. 1). This statement published by the PTO also puts patent practitioners on notice that, pursuant to the 1984 Amendments, the Board will decide all issues fairly raised and fully developed during the interference, including issues relating to patentability.

Appellants, therefore, should have realized that, in order to prevail in the interference proceeding, all issues fairly raised and which were or could be fully developed had to be resolved in their favor by or at the final hearing, including the inventorship issue which they themselves raised and for which they possessed all pertinent facts. Appel-

lants should have known that they had to comply with the requirements of the regulation and to refile a proper motion in order to resolve the inventorship issue in the interference. Appellants had notification from the APJ that they could refile their motion at any appropriate time during the interference. In spite of this, however, Appellants chose not to refile their motion during the interference, advising the APJ that they would wait until return of the case to *ex parte* examination. Unfortunately, in this unusual circumstance, the APJ contributed to Appellants' confusion by not clearly stating that Appellants were obligated under the regulations to correct inventorship *inter partes*.

### D. Both the Party Green and the Inventorship Issue Remained in the Interference

■ Appellants argue that once it became known that Green would lose on priority, Green was no longer a proper party with a legally recognized interest in the interference; at that point, the interference should have been dissolved and Appellants returned to *ex parte* examination where they could attempt to correct the inventorship of their application. According to Appellants, because Green was no longer a proper party to the interference, Green could no longer contest Appellants' inventorship. In Appellants' view, Green lacked standing. Green's motion for judgment under 35 U.S.C. § 102(f), therefore, was improper and thus could not have served as notice to Appellants that the inventorship issue had to be, or would be, resolved *inter partes*. Again, Appellants are incorrect.

In *Wu v. Wang*, this court held that the Board acted properly in not terminating an interference even after it became clear which party would lose. 129 F.3d at 1241, 44 USPQ2d at 1644. "Despite having lost the right to his patent as a result of an adverse decision on patentability, Wang still had an interest in seeing that Wu was likewise not entitled to the subject matter of the interference, albeit on patentability, not priority,

---

5. That changing inventorship may be more complicated *inter partes* than *ex parte* is of no moment. Once Congress decided to unify the

proceedings, that consequence automatically followed for all patentability issues.

grounds." *Id.* at 1241, 44 USPQ2d at 1644–45. Similarly, in the present case, although Green lost the right to his patent based on lack of priority, Green still had an interest in seeing that Appellants likewise were not entitled to a patent on the subject matter of the Count in the interference, even if based on patentability rather than priority grounds. Thus, Green still had standing. Green's motion for judgment under 35 U.S.C. § 102(f), therefore, was a motion by a proper party upon which the Board could rule.

█ Appellants also argue that the APJ intended to remove the inventorship issue from further consideration in the interference when he vacated the initial discovery order, and for this reason too, Green's motion for judgment based on that issue was improper. Although the APJ did not state any such intention, we are mindful that his order vacating the discovery order, in combination with his imprecise language that Appellants' motion to correct inventorship "*can* be filed or refiled at any appropriate time in an interference," *Green,* slip op. at 3 (Feb. 14, 1995) (emphasis added) (as opposed to *must* be so refiled), could have led Appellants to believe that the inventorship could also be litigated later, at their election. Appellants' faulty belief was furthered when Appellants stated their intention to refile only upon resumption of *ex parte* examination, and neither the APJ nor the Board contradicted them. Based on the legislative history discussed *ante* and the case law interpreting that history, however, we conclude that Congress intended all issues fairly raised and fully developed in the interference to be resolved in the interference. Moreover, the PTO's regulation implementing the 1984 Amendments, as interpreted by the PTO itself, so requires.[6] The inventorship question was fairly raised in the interference and Green remained a proper party. That it was arguably not also "fully presented" was largely Appellants own doing. Therefore, Appellants had to litigate the question *inter partes.*

However, because Appellants may not have understood that they had to litigate inventorship *inter partes* or suffer an adverse judgment, we will direct the Board to afford Appellants a last, clear chance to perfect their motion to correct inventorship *inter partes.* Although the Green motion for judgment by itself would have put Appellants on sufficient notice, the silence by the APJ and the Board in the face of Appellants' stated intention to refile *ex parte* and the unclear statement of the APJ as to timing negated the otherwise adequate notice of the Green motion.

## CONCLUSION

The Board erred in awarding what amounts to a default judgment against Appellants because, on the peculiar facts here, Appellants were not given adequate notice that they had to refile their motion to correct the inventorship of their application during the interference or lose their application claims. Accordingly, the final judgment of the Board entered against Appellants based solely on their failure to refile their motion is vacated and the case is remanded with instructions to the Board to set a fixed period of time for Appellants to reform and refile their motion. If Appellants fail to do so, final judgment based on their further default may be reentered. If they do so in compliance with the regulations, the Board shall decide whether inventorship is correct or is correctable and therefore whether the application claims are patentable. It shall then render judgment accordingly. In no event, however, shall the case be returned to *ex parte* examination respecting the inventorship issue raised in the interference.

*VACATED AND REMANDED.*

## COSTS

Each party shall pay its own costs.

---

6. "In rendering a final decision, the Board may consider *any properly raised* issue, including priority of invention, ... *patentability* of the invention, ... and any other matter necessary to resolve the interference." 37 C.F.R. § 1.655(a) (emphasis added).

"After final hearing, the Board *shall* enter a decision resolving the issues *raised* at final hearing." 37 C.F.R. § 1.658(a) (emphasis added).